Jerome **FLORES**, Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 45566.

Court of Criminal Appeals of Texas.

Feb. 7, 1973.

Rehearing Denied March 21, 1973.

---

Melvyn Carson Bruder, Dallas (Court Appointed on Appeal), for Jerome Flores, Jr., for appellant.

Henry Wade, Dist. Atty., Jerome L. Croston, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

This is an appeal from a conviction for murder. Punishment was assessed by the jury at life.

Initially, appellant contends that the evidence is insufficient to sustain the conviction.

Juan Garza testified that he and the deceased, Robert Villareal, left the deceased's home in Dallas about 10 P.M., on July 3, 1970, to go to a lake. When Garza and the deceased had travelled to within three miles of the traffic circle on Harry Hines Boulevard, they "turned back" and drove to the Copa Cabana Lounge on Ross Avenue where they "bought a beer." Upon leaving the lounge some thirty minutes later, Garza saw appellant and co-defendant Ortega, also known as "Three." After Garza shook hands with Ortega and appellant, Ortega told him to leave. Ortega and appellant were standing by a late model blue Ford Torino with black racing stripes. Shortly thereafter, deceased came out of the lounge and Garza and the deceased left in Garza's automobile. According to Garza, the deceased had done the driving throughout the evening, since Garza's driver's license had been suspended. About the time they reached the post office on Bryan Street, deceased told Garza that a car was behind them. The following testimony was elicited from Garza concerning the events which followed:

"Q. Which way did you look to, did you look to the right or did you look to the left?

"A.   Left.

"Q.   All right.   Please tell the court and jury what you saw when you looked to the left?

"A.   Well, I seen that blue Torino.

"Q.   Was this the same blue Torino that you had seen a few minutes earlier in front of the Copa Cabana?

"A.   Yes.

"Q.   The one where you had seen Jerome Flores, Jr. and Augustine Mendoza Ortega standing by?

"A.   Yes, sir.

"Q.   Who was driving that automobile, do you recall?

"A.   Jerome.

"Q.   Jerome Flores, Jr.

"A.   I saw him driving the automobile, yes, sir.

"Q.   . . .   Was there anyone else seated in the front seat with him?

"A.   No, sir.

"Q.   Was there anybody else seated, was there someone seated in the back seat?

"A.   Yes, sir.

"Q.   All right.   Who was that?

"A.   Three."

\*     \*     \*     \*     \*     \*

"Q.   When you looked to the left, please tell the jury what you saw?

"A.   I seen that blast, shotgun fire."

As a result of the gunshot, Garza lost his left eye.   Dr. Walter Hofman, Medical Examiner, testified that the deceased died as the result of a "shotgun wound in the head."

Deceased had killed appellant's uncle in 1967 and had been released from the Department of Corrections three weeks before the time in question.

Appellant urges that "mere presence" at the scene does not show guilt and that there is no evidence that appellant fired the shot or that there was any plan, purpose or scheme between appellant and Ortega.   In addition, appellant argues there is no showing of aid or encouragement furnished by appellant to Ortega.

The jury was instructed on the law of principals.

Appellant was present outside the Copa Cabana with Ortega a short time before the shooting.   Appellant was the driver of the car which pursued the deceased and Garza after they left the lounge.   The fatal shot came from the direction of the car which appellant was driving.

Garza stated that he was able to catch a glimpse of the car appellant was driving after the shot was fired and it went "straight ahead on Bryan."

Article 65, Vernon's Ann.P.C., provides: "All persons are principals who are guilty of acting together in the commission of an offense."

■   The jury had sufficient evidence before it to conclude that appellant was acting with another in the commission of the murder.   See Scott v. State, Tex.Cr. App., 461 S.W.2d 619;  Gerzin v. State, Tex.Cr.App., 447 S.W.2d 925;  Ibarra v. State, Tex.Cr.App., 444 S.W.2d 926;  Gonzales v. State, 171 Tex.Cr.R. 373, 350 S.W.2d 553.

■   Appellant next contends that the evidence is insufficient to corroborate the testimony of Garza "who was rendered an accomplice witness."

Appellant urges that Garza became an accomplice witness by virtue of having told one Ralph Robledo he didn't see who fired the shot and he didn't want to testify.

Garza was not connected to the offense in the instant case by unlawful act or omission on his part, transpiring before, at the time of, or after the commission of the offense. Clearly, a prosecution would not lie against him under the indictment by which the accused was charged. See Article 38.14, Vernon's Ann.C.C.P.; Gausman v. State, Tex.Cr.App., 478 S.W.2d 458; DeVault v. State, Tex.Cr.App., 449 S.W.2d 235.

We reject appellant's contention that Garza was an accomplice witness.

■ Appellant contends that the court erred in admitting evidence concerning the relationship between the deceased and appellant's uncle.

Appellant urges that the testimony concerning the deceased having killed appellant's uncle in 1967 was irrelevant and prejudicial.

Article 1257a, V.A.P.C., permits the State or the defendant in a homicide case to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide. See Coleman v. State, Tex.Cr. App., 442 S.W.2d 338; Brown v. State, 171 Tex.Cr.R. 320, 349 S.W.2d 722.

■ We find that the complained of testimony was admissible under Article 1257a, V.A.P.C., in that it was a circumstance tending to show the relationship between appellant and deceased, who had only been out of the Department of Corrections three weeks after having killed appellant's uncle in 1967.

■ Appellant contends that the court erred in refusing to instruct a witness to testify upon appellant's request.

Dr. Morton Mason, Director of the Criminal Investigation Lab for Dallas, was called by the appellant and testified the alcohol concentration in the blood of the deceased was .207 percent. He further stated that he had testified in about two thousand cases in which blood alcohol content was involved. Then, appellant's counsel asked the doctor's opinion as to whether or not this alcohol concentration would result in intoxication of the deceased. The doctor refused to answer this question, stating that he had no opinion because "I have not been retained as an expert witness for the defense . . . and unless I am retained as an expert witness . . . I am . . . refusing to give testimony for the defense." In Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, relied on by appellant, the United States Supreme Court held the right under the Sixth Amendment of a defendant in a criminal case to have compulsory process for obtaining witnesses in his favor applies to the State through the Fourteenth Amendment. In Washington v. Texas, supra, the defendant, who was on trial for murder, had testified in his own behalf that one Fuller had taken the gun from him before the shooting and that he (defendant) had unsuccessfully tried to persuade Fuller to leave before the shooting. Prior to the trial of defendant, Fuller had been convicted of the same murder and sentenced to fifty years in prison. When Fuller was called to testify, the trial judge sustained the State's objection under Article 82, V. A.P.C., and Article 711, V.A.C.C.P., providing at the time of trial that persons charged or convicted as co-participants in the same crime could not testify for one another.[1]

In reversing the conviction in Washington v. Texas, supra, the United States Supreme Court said: "The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the

1. A footnote in Washington v. Texas, supra, recognized that Art. 36.09, V.A. C.C.P. (1965), which became effective after defendant's trial, repealed the two statutes.

right to secure the attendance of witnesses whose testimony he had no right to use."

In the instant case, the trial court should have instructed the witness to answer appellant's question, and in the event of refusal, the court should have held the witness in contempt.

In determining whether this error requires reversal, we again look to the opinion in Washington v. Texas, supra, where the court made the following comments regarding the harm suffered by defendant in the trial court's disallowing the witness Fuller to testify: "The record indicates that Fuller would have testified that petitioner pulled at him and tried to persuade him to leave, and that petitioner ran before Fuller fired the fatal shot. It is undisputed that Fuller's testimony would have been relevant and material, and that it was vital to the defense. Fuller was the only person other than petitioner who knew exactly who had fired the shotgun and whether petitioner had at the last minute attempted to prevent the shooting."

 Assuming that the witness in the instant case had answered the question favorably to appellant and had testified that the alcohol concentration in the blood of the deceased would, in his opinion, have rendered the deceased intoxicated, we fail to see how appellant was harmed by the denial of such testimony. Dr. Hofman, a witness called by the State, testified on cross-examination that the amount of alcohol in the deceased's blood system was over twice as much as required to show intoxication in a driving while intoxicated case. We fail to see how Dr. Mason's testimony that the alcohol percentage in deceased's blood would indicate that deceased was intoxicated (if such would have been his testimony) could have been material to appellant's defense. If it be urged that evidence of intoxication of deceased would be relevant to the question of whether the eye witness Garza was intoxicated when he identified appellant on the night in question, we are of the opinion that such testimony would be so highly speculative as to render the denial of same harmless to appellant.

We conclude that the refusal of the court to instruct the witness to testify does not require reversal.

Appellant sets forth two more contentions which are not briefed and appear in appellant's brief under the heading of "Additional Grounds of Error."

We have reviewed the same and find them to be without merit.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.