UNITED STATES, Appellee,

v.

David A. VIETOR, Missile Technician
Third Class, U. S. Navy, Appellant.

No. 35,077.

NCM 77–0374.

U. S. Court of Military Appeals.

Dec. 8, 1980.

For Appellant: Lieutenant Lawrence W. Muschamp, JAGC, USN (argued); Eugene A. Ritti, Esquire.

For Appellee: Lieutenant William C. Martucci, JAGC, USNR (argued); Commander T. C. Watson, Jr., JAGC, USN, Lieutenant Commander Paul B. Thompson, JAGC, USN (on brief); Lieutenant Commander N. P. DeCarlo, JAGC, USN, Lieutenant Michael C. Farrow, JAGC, USNR.

OPINION

COOK, Judge:

Contrary to his pleas, appellant stands convicted by a special court–martial consisting of a judge alone of the possession, sale and transfer of marihuana, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. We granted review to consider appellant's contentions that a search involved in the prosecution was invalid because his commanding officer was *per se* disqualified and that the evidence is insufficient to establish his guilt.

A *per se* disqualification argument like appellant's was rejected by the Court in *United States v. Ezell*, 6 M.J. 307 (C.M.A. 1979). The argument as to the insufficiency of the evidence is predicated on alleged inadmissibility of a laboratory report, which was used to prove the identity of the contraband, and the allegedly improper denial of his request to produce the laboratory analyst as a witness. In *United States v. Strangstalien*, 7 M.J. 225 (C.M.A.1979), the Court held that a laboratory report used to prove the nature of a substance submitted for analysis could properly be admitted as a business entry. The opinion reaffirmed the earlier holdings of the Court in *United States v. Miller*, 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974), and *United States v. Evans*, 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972). *See Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Thus, we reject appellant's argument that a laboratory report is inadmissible, notwithstanding it is made in the regular course of business and is properly authenticated.

The record reflects that no one from the laboratory testified during the trial, although trial defense counsel objected to the report on the ground it was not properly authenticated. However, the evidence of record did establish that the contraband was sent by registered mail to the Camp Zama Criminal Investigation Laboratory. We have previously judicially noted

that a "crime laboratory" is a place in which scientific methods and principles are applied in the testing and analysis of

various items in connection with the detection and prosecution of crimes. Cf. Webster's Third New International Dictionary, 1963 Unabridged edition, page 1260. Obviously, the regular course of the laboratory's business is to record the results of its analysis and make its report to those concerned. From the file number and tenor of the report involved here, we are satisfied that it was made in the regular course of the laboratory's business. We conclude therefore that the exhibit falls within the business entry exception to the hearsay rule.

*United States v. Evans, supra* at 581, 45 C.M.R. at 355. Additionally, the investigative agent who sent the evidence to the laboratory testified that he had received the report from the laboratory and it was similar to the ones he had received on many occasions. The testimony discloses a familiarity with the business of the particular laboratory and its function of submitting reports of the kind in question. Thus, we are satisfied the record of trial established that the document was properly authenticated as a business record within the meaning of paragraph 144c, Manual for Courts–Martial, United States, 1969 (Revised edition). *See generally United States v. Wilson*, 1 M.J. 325 (C.M.A.1976).

Left for consideration is whether the military judge properly denied the defense request for the analyst. The propriety of action on a request for a defense witness is not normally involved with the question of whether there is sufficient evidence to sustain a conviction, but appellate defense counsel submit that the laboratory report was improperly admitted into evidence and absent the testimony of the analyst, there is no competent evidence as to the nature of the substance involved. While we have held that the laboratory report was properly admitted, an ancillary issue is raised as to the appellant's right to require the production of the witness under the rule set forth in *Strangstalien, Miller* and *Evans.*

The issue is raised in the following factual context. Trial defense counsel submitted a request on the afternoon of October 1,

1976, for the analyst as a defense witness. Trial began on October 4, 1976. Trial counsel observed at trial that the convening authority had "not had an opportunity to view the request," but he and defense counsel agreed that a recess to allow the convening authority to act on the request was not required. *See United States v. Credit*, 8 M.J. 190, 192 n. 1 (C.M.A.1980). Defense counsel asserted that the witness was necessary "for the purpose of cross–examination to determine exactly what procedures he used and by what method he determined that the substances here were marijuana." He also acknowledged that he had not communicated with the witness because of unspecified restraints on communications, and he knew "of no case law requiring the defense to communicate with the chemist prior to court–martial" because the analyst's competence was always an issue. Although counsel offered to talk to the requested witness telephonically if the court was recessed for that purpose, he continued to assert that prior communication with him was unnecessary. The military judge denied the request on the basis that "there's no indication that the chemist is unqualified or that the procedures are not in fact correct."

In *United States v. Evans, supra* at 582, 45 C.M.R. at 356, the Court observed the following as to an accused's right to summon the analyst:

[W]e do not intimate that the accused must forgo the right to attack the report's accuracy. If he wishes to do so,, he may have the analyst summoned and "attack the regularity of the test procedure and the competency of the ... [person] who ran the test.... But these factors ... 'go to the weight of the evidence rather than to (its) initial admissibility.'"

Subsequently in *United States v. Miller, supra* 23 U.S.C.M.A. at 250, 49 C.M.R. at 383, the Court explained the import of the quoted language as follows:

The point of the statement is that as the business entry is admissible without the in–person testimony of the declarant, the accused can assert his right to cross–ex-

amination by calling the declarant as a witness and, as provided in rule 806 of the proposed Federal Rules of Evidence, "examine him on the statement as if under cross–examination." 56 F.R.D. at 329.

The perimeters of an accused's right to the production of the analyst has divided the Court. *See* my separate opinion in *United States v. Strangstalien, supra* 7 M.J. at 230. Appellant now asserts that the right is absolute and the normal conditions precedent to the Government's obligation to produce a defense requested witness are inapplicable. We disagree. As the trial judge did not deny the request on the basis it was untimely, we will pass over any question as to timeliness to address the merits of the appellate argument. *See* my separate opinion in *United States v. Stocker,* 7 M.J. 373, 374 (C.M.A.1979).

 In *United States v. Miller, supra* 23 U.S.C.M.A. at 248, 49 C.M.R. at 381, the Court addressed the relationship between the admissibility of a laboratory report as "a business entry and the right of an accused, assured by the Sixth Amendment of the United States Constitution," and specifically rejected the accused's claim that such right precluded its admissibility. That holding was recently reaffirmed in *United States v. Strangstalien, supra.* Thus, the presence of the analyst is not required by the Sixth Amendment as a condition precedent for the admissibility of the laboratory report. However, the cited cases did emphasize an accused had a right to call the analyst under appropriate circumstances for the purpose of attacking his competency and test procedures. *United States v. Strangstalien, supra* 7 M.J. at 229; *United States v. Miller, supra* 23 U.S.C.M.A. at 250, 49 C.M.R. at 383; *United States v. Evans, supra* at 582, 45 C.M.R. at 356. As the defense's purpose is to attack the work product of the witness which was used by the opposing party, cross–examination is permitted, notwithstanding it is the defense that insists upon the presence of the witness. Thus, the import of the cited cases is that the accused must be permitted to cross–examine the witness for the purpose of attacking the reliability of the laboratory report, not that the Sixth Amendment requires the analyst's presence in all cases when requested by the accused irrespective of the circumstances involved in the case.

 Chief Judge Everett and I agree that the admission of a laboratory report into evidence does not give the accused an automatic right to the attendance of the person who performed the laboratory tests. Something more is required; that something is an indication of the need to examine the witness. We also agree that defense counsel in this case was remiss in not attempting to communicate, before trial, with the witness whom he proposed to examine. Absent such communication or information from other sources, defense counsel could not know, or suspect, that the desired examination would reveal any chink in the competence or credibility of the analyst, or cast doubt, in the slightest degree, on the reliability of the processes of the analysis or its results. However, we disagree as to what counsel actually did.

 As I read the record, I am convinced defense counsel believed the accused had an absolute right to the presence of the witness and insisted on that right, without proffer of any meaningful indication that examination of the analyst would adduce favorable evidence for the accused. I would, therefore, sustain the trial judge's ruling on the ground that the defense had failed to satisfy the requirement that the testimony it sought was favorable to the defense case, and I would affirm the decision of the United States Navy Court of Military Review. Chief Judge Everett, however, is of the opinion that trial counsel and the military judge sought to impose upon defense counsel an impermissible burden of specificity of detail which so obscured the issue that he cannot conclude, beyond a reasonable doubt, that the absence of the witness was not prejudicial to the accused. At the same time, he regards defense counsel's omissions as contributing to the uncertainty of the record. Believing that the Government should have the op-

portunity to demonstrate, beyond a reasonable doubt, that the testimony by the witness would not have induced the trier of fact to render findings more favorable to the accused, he concludes a limited hearing is proper to determine whether the failure to produce the witness was not prejudicial to the accused. *See United States v. Killebrew*, 9 M.J. 154 (C.M.A.1980).

To effect a disposition of the case, we vacate the decision of the United States Navy Court of Military Review, subject to reinstatement if required by the results of the further proceedings we specify. *See United States v. Alexander*, 2 M.J. 237 (C.M.A.1977); 3 M.J. 107 (C.M.A.1977). The record of trial is returned to the Judge Advocate General of the Navy for submission to an appropriate general court–martial authority. Alternatively, that authority may, if he determines in his discretion that further proceedings are impractical, dismiss the charges and forward an authenticated copy of his dismissal action to this Court, or, he will refer the record to a general court–martial for a limited hearing on the matter in issue. If a general court–martial is convened the military judge, under provisions of Article 39(a), UCMJ, 10 U.S.C. § 839(a), will conduct the limited hearing. At the conclusion of the proceedings, he will enter findings of fact and conclusions of law and terminate the hearing. The record and verbatim transcript of the hearing will be returned directly to this Court. *United States v. Killebrew, supra* 9 M.J. at 162.

EVERETT, Chief Judge (concurring in result):

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall ... be confronted with the witnesses against him." Reflecting a preference for face–to–face confrontation at trial and a concern for the right of cross–examination, the Confrontation Clause of the Sixth Amendment contemplates:

"a personal examination and cross–examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

*See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980), quoting from *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895).

If read literally, the Confrontation Clause "would require, on objection, the exclusion of any statement made by a declarant not present at trial." 100 S.Ct. at 2537. However, just as the hearsay rule has many exceptions, there are many exceptions to literal application of this Clause. Thus, in *Mattox v. United States,* 146 U.S. 140, 151, 13 S.Ct. 50, 53, 36 L.Ed. 917, 921 (1892), the Supreme Court stated that "[d]ying declarations are admissible" against a defendant in a federal criminal trial–although, of course, the declarant is not available to confront the defendant at trial or to be cross–examined by his counsel. In *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Court upheld the admissibility, as substantive evidence against the defendant, of testimony that had been given previously by a prosecution witness at a preliminary hearing.[1] Similarly, the Supreme Court ruled in *Ohio v. Roberts, supra,* that an Ohio state court had properly admitted in evidence the transcript of testimony given at a preliminary hearing by a witness who was unavailable at trial.[2]

*Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), concerned the admissibility of testimony by a prosecution witness that an alleged accomplice of the defendant had told the witness about an

---

1. Of course, in that case the witness was testifying at trial and so was subject to cross–examination about his earlier statements.

2. A dissent questioned whether unavailability had been adequately established by the prosecution.

incriminating statement made to him by the defendant. The evidence had been received pursuant to provisions of a Georgia statute which, as interpreted by the state courts, went beyond the usual scope of the hearsay exception for statements by co-conspirators; it not only allowed reception of statements made in the course of and in furtherance of the conspiracy but also those made during a subsequent period when the conspirators were engaged only in concealment of the criminal enterprise.

In seeking to explain the exceptions to literal application of the Confrontation Clause of the Sixth Amendment, the Supreme Court reiterated in *Ohio v. Roberts, supra* 100 S.Ct. at 2539:

> "The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans, supra*, at 89 [91 S.Ct. at 220], and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green, supra*, 399 U.S., at 161, [90 S.Ct. at 1936]. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability.'" [*Mancusi v. Stubbs*,] 408 U.S. [204], at 213, 92 S.Ct. 2308 at 2313, 33 L.Ed.2d 293]. [1972].

Moreover, as further explained in *Ohio v. Roberts, supra* :

> The Court has applied this "indicia of reliability" requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the "sub-

stance of the constitutional protection." *Mattox v. United States*, 156 U.S., at 244, 15 S.Ct. at 340, 39 L.Ed. 409.[3] This reflects the truism that "hearsay rules and the Confrontation Clause are generally designed to protect similar values," *California v. Green*, 399 U.S. at 155, 90 S.Ct. at 1933, 26 L.Ed.2d 489, and "stem from the same roots," *Dutton v. Evans*, [*supra* 400 U.S. at] 86, 91 S.Ct. at 218, 27 L.Ed.2d 213. It also responds to the need for certainty in the workday world of conducting criminal trials.

Since 1960, this Court has held that the right of confrontation applies to service personnel. *United States v. Jacoby*, 11 U.S. C.M.A. 428, 29 C.M.R. 244 (1960). Moreover, like the Supreme Court, we have recognized that there are many exceptions to the literal application of this right—many of those exceptions conforming substantially to well-recognized hearsay exceptions. On several occasions, we have ruled that laboratory reports, like the one involved in the case at hand, are admissible, even though no witness is called to testify concerning the laboratory tests which are reported. *United States v. Strangstalien*, 7 M.J. 225 (C.M.A.1979); *United States v. Miller*, 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974); *United States v. Evans*, 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972).

In light of these precedents, the answer to the specified issue is obvious. That issue is: "Whether the Government failed to meet its burden of proof in establishing that the substance taken from the appellant was a controlled substance because it failed to produce the examining chemist?" 5 M.J. 254 (1978). Of course, the Government met its burden of proof since, even over defense objection, the laboratory report offered was admissible as a business record, without

---

**3.** At this point in the text appears footnote 8 to the Opinion of the Court which states:

See, e.g., *Pointer v. Texas*, 380 U.S., at 407, 85 S.Ct. at 1069, 13 L.Ed.2d 923 (dying declarations); *Mattox v. United States*, 156 U.S. 237, 243–244, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895) (same); *Mancusi v. Stubbs*, 408

U.S. 204, 213–216, 92 S.Ct. 2308, 2313–2315, 33 L.Ed.2d 293 (1972) (cross–examined prior–trial testimony); Comment, 30 La.L.Rev. 651, 668 (1970) ("Properly administered the business and public records exceptions would seem to be among the safest of the hearsay exceptions").

calling as a witness the person who had performed the tests.[4]

The real issue in the case concerns the possible violation of another of the accused's Sixth Amendment rights–"the right ... to have compulsory process for obtaining witnesses in his favor." This right is also recognized in the Uniform Code–at least, implicitly–by the provisions of Article 46, Uniform Code of Military Justice, 10 U.S.C. § 846, concerning "opportunity to obtain witnesses and other evidence."

The right to compulsory process has been discussed extensively by Professor Westen in several landmark articles. *See* Westen, *The Compulsory Process Clause*, 73 Mich.L. Rev. 71 (1974); *Compulsory Process II*, 74 Mich.L.Rev. 192 (1975); *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv.L. Rev. 567 (1978). As he points out, the Compulsory Process Clause had become almost a dead letter after 170 years of desuetude, before it was given new life in *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). There, in a murder trial, defendant Washington had proposed to call as a defense witness an alleged accomplice, who would have testified that he, rather than Washington had fired the fatal shot, and that this had been done against the defendant's wishes. He was prevented from doing so by a Texas statute which rendered "accomplices" incompetent to testify for one another. In reversing the conviction, the Supreme Court ruled that the right to compulsory process includes not only the right to compel a witness's attendance in court but also to have the benefit of that witness's testimony unrestricted by any such statutory disqualification of the witness.

From his analysis of *Washington v. Texas, supra*, and other cases concerning compulsory process, Professor Westen reaches this conclusion:

Compulsory process is more important to the accused than confrontation because in most cases it can substitute for confrontation, while confrontation cannot replace the functions served by compulsory process. The essential difference between the two is their allocation of the burden of producing witnesses. Confrontation allocates to the prosecution the burden of producing witnesses against the accused, while compulsory process allocates to the accused the burden (and the means) of producing witnesses in his favor. Thus, unless a prosecution witness has become unavailable, the right of confrontation only relieves the defendant of the burden of issuing subpoenas for the witnesses whose out–of–court statements are introduced against him. Abolition of the right of confrontation would not automatically result in trials by affidavit and hearsay; it would simply shift to the defendant the administrative burden of producing the adverse declarants for cross–examinations, along with producing the separate witnesses in his favor. Abolition of compulsory process, on the other hand, would be more drastic: It would leave the defendant face to face with the witnesses against him, but with no means to produce the witnesses in his favor.

. The compulsory process clause is also broader than the confrontation clause. Confrontation is exclusively a trial right. It has nothing to do with the manner in which the defendant gathers, preserves, or produces evidence. It merely guarantees him the right to insist that evidence

---

4. In its previous decisions the Court has ruled that laboratory reports like the one involved in the case at hand are business records within a well–recognized exception to the hearsay rule. *United States v. Strangstalien*, 7 M.J. 225 (C.M. A.1979); *United States v. Miller*, 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974); *United States v. Evans*, 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972). While the argument advanced in the dissent is directed to laboratory reports, it would apply equally to any other business rec-

ord. Accordingly, even the most routine business record could not be introduced over defense objection without offering the testimony in court of every person who prepared any entry contained in that record or, in the alternative, demonstrating that any such person was "unavailable"–as that concept is described in the dissent. I cannot find anything in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), that requires such drastic consequences.

against him be presented at trial through direct testimony or its equivalent. *Compulsory process, on the other hand, is more than a trial right. It gives the defendant the right to discover the existence of witnesses in his favor, to produce them in court, to introduce their statements into evidence, and, if necessary, to compel them to testify over claims of privilege.* In sum, it constitutionalizes the defendant's right to be heard in his defense.

73 Mich.L.Rev. at 183–84 (emphasis added).

One example of the breadth of the right to compulsory process is adverted to in footnote 12 of the Opinion of the Court in *United States v. Strangstalien, supra,* 7 M.J. at 229, as follows:

> 12. *See Flores v. State,* 491 S.W.2d 144 (Tex.Cr.App.1973), where the director of a crime laboratory which had performed an examination refused to testify for the defense unless retained as an expert. Citing the Sixth Amendment right to compulsory process of witnesses, the Texas Court of Criminal Appeals held the trial judge erred in failing to instruct the witness to testify about the previously conducted examination. *Cf.* Westen *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 Harv.L.Rev. 567, 619 n.143 (1978).

Professor Westen suggests, "What distinguishes a witness 'against' the accused from a witness 'in his favor' is *not* the *content* of the witness' testimony but the *identity of the party relying* on his evidence." Thus, "witnesses 'in his favor' are all the remaining witnesses whom a defendant wishes to examine after the prosecution has confronted him with its witnesses." 91 Harv.L.Rev. 604–05. Accordingly, the business records exception to the hearsay rule–and to the Confrontation Clause–allows the records to be introduced in evidence by the prosecution, even though the defense may then have the declarant subpoenaed as a witness to testify about preparation of the docu-

ments. *See id.* at 618–19. In that event, the witness being called by the defense may be examined with leading questions and impeached. To deny defense counsel such latitude in cross–examination would tend to infringe on the accused's right to compulsory process. *See* 74 Mich.L.Rev. 232–33. *Cf.* Fed.R.Evid. 806; Mil.R.Evid. 806.

Of course, an accused "has no constitutional right to subpoena witnesses whose testimony is immaterial to his defense." 74 Mich.L.Rev. at 213; *see id.* at 213–18. Presumably the burden falls on the defense to show the materiality of a witness whom it has requested. However, the Court already has taken a firm position that a person who has prepared a laboratory report that is introduced in evidence by the prosecution is a material witness for the defense. Otherwise, I cannot explain these unequivocal statements by the Court:

(a)

Although we allow the entry into evidence as a properly authenticated business entry, this does not stop the introduction of evidence regarding inaccuracy of procedures or incompetency of the examiner. Upon affirmative request, the analyst may be summoned for cross–examination on his statement. There was no affirmative request, in this case; lack of objection to introduction of Exhibit 5 waived the contest.

*United States v. Strangstalien,* 7 M.J. at 229.

(b)

In *Evans,* we emphasized that the admission into evidence of a laboratory report as a business entry does not bar the accused from attacking its accuracy. We said that if the accused "wishes to do so, *he may have the analyst summoned"* to examine him as to his competency and as to the regularity of the procedure employed. 21 USCMA at 582, 45 CMR at 356 (emphasis added). The point of the statement is that as the business entry is admissible without the in–person testimony of the declarant, the accused can assert his right to cross–examination by

calling the declarant as a witness and, as provided in rule 806 of the proposed Federal Rules of Evidence, "examine him on the statement as if under cross–examination." 56 F.R.D. at 329.

*United States v. Miller,* 23 U.S.C.M.A. at 250, 49 C.M.R. at 383.

### (c)

If he wishes to do so he may have the analyst summoned and "attack the regularity of the test procedure and the competency of the . . . [person] who ran the test . . . But these factors . . . 'go to the weight of the evidence rather than to (its) initial admissibility.' " *Thomas v. Hogan,* supra at page 361. In the present case, the accused not only made no effort to attack the analysis of the pills, but twice stated that he had no objection to receipt of the exhibit in evidence. Under the circumstances, we find the laboratory report was properly admitted in evidence.

*United States v. Evans,* 21 U.S.C.M.A. at 582, 45 C.M.R. at 356.

Paragraph 115*a* of the Manual for Courts–Martial requires that a request for the personal appearance of a witness be made in writing and contain "(1) a synopsis of the testimony that it is expected the witness will give, (2) full reasons which necessitate the personal appearance of the witness, and (3) any other matter showing that the expected testimony is necessary to the ends of justice." Under some circumstances a rigid application of these requirements would produce a conflict with an accused's statutory and constitutional right to compulsory process. For example, with hostile witnesses, it is often impossible to foresee what testimony will be given by the witness before he has been exposed to cross–examination. Thus, such a witness could not be compelled by the defense to appear in court against his will because it would be impossible to meet the literal requirements of paragraph 115*a*. However, under my reading of the Court's language in *Strangstalien, Evans,* and *Miller,* the very circumstance that a laboratory report like that in the case at hand will be offered in evidence establishes the materiality of the witness who prepared that report; and the accused's right to his presence in court cannot be defeated by invoking the language of paragraph 115*a*.

On the other hand, I consider that paragraph 115*a* embodies some legitimate policy determinations made by the President in the proper exercise of the authority conferred on him by Article 36, UCMJ, 10 U.S.C. § 836. For one thing, the requirement that a written request for a witness be made in advance of trial enables the Government to consider alternatives that it may wish to pursue. Conceivably, the Government might choose to proceed to trial without relying on a laboratory report. In that event, there would remain no basis for the defense to compel attendance of the requested witness, since his testimony promises to be material only if the laboratory report is introduced by the prosecution.[5] Secondly, the Government might be able to make arrangements for a second test of the questioned substance to be made–this time at a laboratory where the person performing the test would be readily available to testify at the trial. Thirdly, arrangements might be made for the witness to be brought from the place where the test was performed to testify at the court–martial.[6] Finally, there may be some other means for satisfying the accused's right to have the testimony of the witness produced at trial.[7] The important point is that the Government is entitled to prescribe reasonable rules whereunder it will have adequate opportu-

---

5. Of course, the situation would be quite different if the defense were seeking production of a witness who made tests whose results were favorable to the accused.

6. If the witness has died or for other reasons is unavailable to testify at the trial, that circumstance will not affect the admissibility of ·the laboratory test results when properly offered under the business records exception to the hearsay rule, since the evidence also falls within an exception to the Confrontation Clause, as discussed earlier in this opinion.

7. Videotaped depositions taken on oral examination may be one means whereby the witness can be cross–examined extensively and his demeanor can be observed by the trier of fact.

nity either to arrange for the presence of the witness or to explore any legally permissible alternative to the presence of the witness.

A second concern may also have motivated the promulgation of paragraph 115a of the Manual. As an advocate for his client, a defense counsel may sometimes anticipate that cost and difficulty to the Government in proving its case might lead either to dismissal of charges or the offer of an attractive plea bargain. Thus, there is a temptation to require the prosecution to arrange for the attendance of witnesses even when the defense counsel does not have any good faith belief that their testimony will benefit his client. It is not unreasonable to require that a defense counsel make some effort prior to trial to communicate with witnesses–even hostile witnesses–whose attendance at trial he is requesting. Discovery rights are broad in military law; and the contact with the witness may be made by letter, by telephone, in person, through associate defense counsel in the place where the witness is located, by deposition, or otherwise. *See United States v. Killebrew*, 9 M.J. 154 (C.M.A.1980). In any event, an effort should be required of defense counsel to discover before trial the expected testimony of a witness, so that the request for presence of the witness at trial will not appear to be merely a tactic intended to harass the Government into dismissal of charges or the offer of a favorable pretrial agreement.

■ Applying the foregoing observations to the case at hand, I conclude that the defense counsel was remiss in making a last–minute request for counsel without previously attempting to communicate with the witness. However, in line with the wording of Manual paragraph 115a, the trial counsel and military judge attempted to impose upon the appellant an undue burden of demonstrating the contents of the expected testimony. Where the defense seeks to have produced for purposes of cross–ex-

amination as a hostile witness a chemist who has prepared the laboratory report on which the Government relies to prove its case, the materiality of his testimony need not be demonstrated in detail. Furthermore, I would not apply a defense waiver in this case since the unqualified language of this Court's prior opinions might reasonably have led to the course pursued by defense counsel. Especially is this true since the Manual in paragraph 115a prescribes rules which, if literally applied in the present context, would unduly restrict an important right of the appellant.

Of course, we do not know what the testimony of the requested witness might have been. Thus, on the present record it is impossible to determine beyond reasonable doubt whether the failure to produce this witness was prejudicial to appellant.[8] However, in the present case, since defense omissions helped induce the error, the Government should have an opportunity to demonstrate beyond reasonable doubt that testimony adduced from the witness by cross–examination would not have induced the trier of fact to make findings more favorable to the appellant. To provide such an opportunity, a limited hearing is now appropriate, wherein the requested witness can be cross–examined in detail as to his qualifications, the test procedures employed, the test results, and any other matter relevant in any way to the subject of the laboratory report introduced by the Government. *See United States v. Killebrew, supra; United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

Accordingly, I join with Judge Cook in ordering the disposition of this case.

FLETCHER, Judge (concurring in the result):

I disagree completely with Judge Cook's lead opinion. I concur in the result reached by Chief Judge Everett, but find his analysis of this case unacceptable. Appellant's case should be decided in line with the

---

**8.** Since the right involved has a constitutional basis, the Government should prove beyond reasonable doubt that the error was not preju-

dicial. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Ward*, 1 M.J. 176 (C.M.A.1975).

general approach of the Supreme Court towards hearsay evidence and the Confrontation Clause articulated recently in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

Generally speaking, both my brother Judges believe that a laboratory report is admissible against an accused at a court–martial without calling as a witness the person who had performed the tests. Such hearsay evidence, they note, is properly admitted at a court–martial as a matter of evidentiary law without the presence of the chemist, where the Government qualifies the laboratory report as a business record. *See United States v. Evans,* 21 U.S.C.M.A. 579, 45 C.M.R. 353 (1972). Additionally, my Brothers, citing our prior decisions in *United States v. Miller,* 23 U.S.C.M.A. 247, 49 C.M.R. 380 (1974), and *United States v. Strangstalien,* 7 M.J. 225 (C.M.A.1979), also conclude that the Confrontation Clause of the Sixth Amendment does not preclude the admission of this hearsay evidence so qualified against an accused at a court–martial.

The latter constitutional holding may indeed be supported by a rather narrow reading of our prior cases. Nevertheless, even assuming that to be the proper interpretation of our past decisions, our case law cannot stand immutable in the face of subsequent Supreme Court decisions to the contrary.

Recently, in *Ohio v. Roberts, supra,* 100 S.Ct. at 2538–39 (footnote omitted) (emphasis added), Justice Blackmun, speaking for the majority, outlined a general approach to the problem of the Confrontation Clause and evidence otherwise admissible at a criminal trial against an accused under a recognized hearsay exception:

> The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. *First, in conformance with the Framers' preference for face–to–face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case* (including cases where prior cross–examination has occurred), *the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant.* See *Mancusi v. Stubbs,* 408 U.S. 204, [92 S.Ct. 2308, 33 L.Ed.2d 293] (1972); *Barber v. Page,* [390 U.S. 719, 722–25 (1968)]. *See also Motes v. United States,* 178 U.S. 458, [20 S.Ct. 993, 44 L.Ed. 1150] (1900); *California v. Green,* 399 U.S. [149], at 161–162, 165, 167, n.16, [90 S.Ct. at 1936–1937, 1938, 1939, n.16.] [7]

> [7] A demonstration on unavailability, however, is not always required. In *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), for example, the Court found the utility of trial confrontation so remote that it did not require the prosecution to produce a seemingly available witness. *Cf.* Read, The New Confrontation–Hearsay Dilemma, 45 S.Calif.L.Rev. 1, 43, 49 (1972).

> *The second aspect operates once a witness is shown to be unavailable.* Reflecting its underlying purpose to augment accuracy in the fact–finding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule." *Snyder v. Massachusetts,* 291 U.S. [97], at 107, [54 S.Ct. at 333]. The principle recently was formulated in *Mancusi v. Stubbs* :

> "The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans,* [400 U.S. 74], at 89, [91 S.Ct., at 220], and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green, supra* 399 U.S., at 161, [90 S.Ct., at 1936]. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability.' " 408 U.S., at 213, [92 S.Ct., at 2313.]

The Court has applied this "indicia of reliability" requirement principally by

concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the "substance of the constitutional protection." *Mattox v. United States*, 156 U.S. [237], at 244, [15 S.Ct. at 340]. This reflects the truism that "hearsay rules and the Confrontation Clause are generally designed to protect similar values," *California v. Green*, 399 U.S., at 155, [90 S.Ct., at 1933] and "stem from the same roots," *Dutton v. Evans*, [400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213] [*supra*]. It also responds to the need for certainty in the workaday world of conducting criminal trials.

*In sum, when a hearsay declarant is not present for cross–examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability."* Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.

My point is obvious. My brother Judges have simply ignored the first constitutional prerequisite for the admission of hearsay evidence in a criminal trial, *i. e.* a *showing of unavailability of the out–of–court declarant.* They do so on the basis of our prior cases decided before *Ohio v. Roberts, supra.* It is interesting to note that the older federal cases, upon which our decision in *United States v. Miller, supra* rests, also fail to treat this question of the availability of the out–of–court declarant. *See McDaniel v. United States*, 343 F.2d 785, 789 (5th Cir. 1965), *cert. denied*, 382 U.S. 826, 86 S.Ct. 59, 15 L.Ed.2d 71 (1965); *Kay v. United States*, 255 F.2d 476, 480–81 (4th Cir. 1958); *United States v. Leathers*, 135 F.2d 507, 511 (2nd

Cir. 1943); *see also Otney v. United States*, 340 F.2d 696, 699–700 (10th Cir. 1965). Such authority, while persuasive both in its time and in the absence of the definitive word from the Supreme Court, must certainly pale before the subsequent direct pronouncements from the chief interpreter of our Constitution. I for one will not ignore its rulings.[1]

My brother Judges, apparently uncomfortable with a Confrontation Clause approach to this issue, have opted to resolve this case by classifying the chemist as a defense requested witness. Judge Cook then interprets the *Evans, Miller* and *Strangstalien* cases to require the accused to establish *appropriate* circumstances for the production of the chemist, *e. g.*, he would offer testimony to diminish the weight of his own laboratory report. *See also* para. 115, Manual for Courts–Martial, United States, 1969 (Revised edition). Chief Judge Everett, realizing the obvious difficulties with such a burden, concedes materiality to such a defense–requested witness but would require the accused's counsel to at least communicate with the chemist prior to trial. The first position I reject outright, being at the very least, contrary to the express holdings of our prior decisions. The second analysis, I find inappropriate.

The laboratory analyst, Shobe, in effect, testified in this case. His statements were introduced *by the Government* in its case–in–chief to prove the chemical nature of the charged substance. This was accomplished through introduction of his laboratory report by means of the business records exception to the hearsay rule. *See* para. 144*d*, Manual, *supra*. Accordingly, this laboratory–analyst witness is materially different in his posture before this Court than a poten-

---

1. Judge Cook refers to footnote 8 of *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), as apparently justifying on constitutional terms our earlier decisions concerning the admissibility of laboratory report evidence as a business record without the presence of the chemist. The Supreme Court, however, was only speaking at that time to the fact that the business record exception as distin-

guished from other hearsay exceptions met the second requirement of its constitutional test, *i. e.* "indicia of reliability." There is no indication in that case that the first requirement, a showing of unavailability, may be dispensed with because these records meet the second requirement of the test. In fact, the contrary is true. *See Ohio v. Roberts, supra.*

tial defense witness who has not testified in any way at trial. Nomenclature has little import in this witness' classification as a matter of law.

Chief Judge Everett, citing Professor Westen, nonetheless, observes that the chemist is a witness in the defense's favor because the Government did not call the chemist for live testimony, but relied in court only on his laboratory report. . Indeed, Professor Weston does speak to such classification of witnesses, but in much more detail than cited by Chief Judge Everett.

This noted law commentator has suggested reasoning to distinguish between witnesses "against the accused" for Sixth Amendment Confrontation purposes and witnesses "in the accused's favor" for Sixth Amendment Compulsory Process purposes. *See* Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv.L.Rev. 567, 601–13 (1978). There, Professor Westen stated:

What distinguishes a witness "against" the accused from a witness "in his favor" is *not* the content of the witness' testimony but the *identity of the party relying* on his evidence. *A person is a witness "against" the accused if he is one whose statements the prosecution relies upon in court in its effort to convict the accused*; in order to use the statements *of* such a witness, the prosecution must take the initiative in identifying and producing him at trial. *Conversely, witnesses "in his favor" are all the remaining witnesses whom a defendant wishes to examine after the prosecution has confronted him with its witnesses.*

*Id.* at 604 (emphasis ˚added). Moreover, he previously noted in footnote 105:

As another plausible method of distinguishing between the two categories of sixth amendment witnesses, it might be argued that witnesses against the accused are solely those whom the prosecution chooses actually to put on the stand at trial. This would leave to the defendant the burden of initiating all other witnesses as part of his right of compulsory process. This definition, however, would

permit the state to prosecute an accused without confronting him with any witnesses at all; the prosecution could present all its evidence in hearsay form, shifting to the defendant the burden of initiating production of witnesses whose out–of–court statements are used to his detriment. But as we have seen, the confrontation clause requires the prosecution to take the initiative in producing certain witnesses, despite the fact that if it had the choice, it would prefer to rely instead on their out–of–court statements. *See* pp. 574–75, *supra.*

*See also id.* at 619 n. 143, 622, 625; *see generally id.* at 613–26.

In this light, the chemist called by the defense under these circumstances is a government witness for whom the Government has the responsibility to justify his absence at trial. *See also* para. 149*b*, Manual, *supra.*

Judge Cook states that "an accused had a right to call the analyst *under appropriate circumstances* for the purpose of attacking his competency and test procedures. *United States v. Strangstalien, supra* at 229; *United States v. Miller, supra* at 250, 49 C.M.R. at 383; *United States v. Evans, supra* at 582, 45 C.M.R. at 356." 10 M.J. 69, 72 (Emphasis added). My review of the cases fails to reveal the above condition on the accused's right to call the chemist. In fact, both *Evans* and *Miller* state "that if the accused 'wishes to do so, he may have the analyst summoned' to examine him as to his competency and as to the regularity of the procedure employed." 23 U.S.C.M.A. at 250, 49 C.M.R. at 383. I perceive a significant difference between an accused's wish and a requirement that he meet a heretofore undefined "appropriate circumstance" test.

The real question in this case is whether our decisions in *Evans, Miller* and *Strangstalien* need be extended to accommodate the constitutional pronouncements of *Ohio v. Roberts, supra.* I, unlike my brother Judges, am willing to make such an adjustment by answering the following question left open in our prior decisions: What ac-

tion should the trial judge take if the Government fails to produce the chemist when requested by the defense? In such a situation, the military judge must require the Government to show the chemist is unavailable (*see Ohio v. Roberts, supra* 100 S.Ct. at 2543–45) or that the utility of trial confrontation is too remote. *Id.*, 100 S.Ct. at 2538 n. 7. If the Government fails in meeting this constitutional burden, the laboratory report evidence should not be admitted. *See* para. 57a(2), Manual, *supra*. If previously admitted by the judge on the condition of such a showing by the Government, it must be struck from the record by the military judge with appropriate instructions to the members if they are the finders of fact.[2] Such an approach assumes that a military accused has opted to exercise his right of cross–examination by an affirmative request for the chemist in the first instance.

In the present case, it is necessary for this Court to decide whether the Government has shown that the chemist was unavailable or that the utility of trial confrontation was too remote. The Government has failed in both these respects.

The Government has established that the chemist was in Japan and the trial was conducted in Hawaii. However, there was no showing whatsoever that the trial counsel "made a *good–faith effort* to obtain his presence at trial." *See Ohio v. Roberts, supra*, 100 S.Ct. at 2543. In fact, it is clear that the Government decided that such an effort was not justified by the defense request. Moreover, there is no showing by the Government that military necessity required military authorities to send for a chemical analysis halfway across the Pacific Ocean and accordingly, the chemist might be considered unavailable on these grounds. The Government has not established in this case that the chemist was unavailable in constitutional terms.

Of course, the Government is not always required to make a demonstration of unavailability where the utility of trial confrontation would be too remote. *See Ohio v. Roberts, supra*, 100 S.Ct. at 2538 n. 7, *citing Dutton v. Evans, supra*. Such a determination, however, depends on the particular facts of a case. No such facts appear in this case. *Cf. United States v. White*, 9 M.J. 168 (C.M.A.1980). Moreover, this Court has not yet ruled as a matter of law that production of the chemist in the usual or unusual case is an act of futility for purposes of trial confrontation by the defense. Indeed, *Evans, Miller* and *Strang-stalien* all suggest that such a trial confrontation can be beneficial to the defense by detracting from the weight of the evidence given to this laboratory report. The defense through cross–examination may attack the credibility of the laboratory analyst by revealing him to be an unqualified scientist or attack the report itself by showing the chemist did not follow the proper procedures in this instance. *See also Kay v. United States, supra*, 255 F.2d at 480. Westen has particularly noted that where a business record includes an evaluation, an accused can "reasonably be expected to wish to probe [it] by an in–court cross–examination of the declarant." 91 Harv.L. Rev. at 619 n. 143. In appellant's case and upon his request for the chemist, the Government was required to show that the chemist was unavailable, or the laboratory report evidence should have been struck from the record of trial.

Accordingly, in view of our past decisions, and the Supreme Court's decision in *Ohio v. Roberts, supra*, I perceive that constitutional error occurred in this case. In light of our inability to determine prejudice from the record before us and any possible confusion which might have resulted from our prior case law, I join Chief Judge Everett in the result reached in his opinion.

**2.** A similar procedure is commented on by Professor Westen in his most recent article: *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv.L.Rev. 567, 578–79 (1978).