**UNITED STATES, Appellee,**

v.

**Specialist Four Reginald A. DAVIS, SSN 579–78–9100, United States Army, Appellant.**

**SPCM 17229.**

U. S. Army Court of Military Review.

29 Oct. 1982.

---

848

Captain Kenneth G. Gale, JAGC, argued the cause for the appellant. With him on the brief were Major Raymond C. Ruppert, JAGC, and Bruce C. Barry, Esquire.

Captain Glenn D. Gillett, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, and Major John T. Edwards, JAGC.

Before MILLER, KUCERA and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

KUCERA, Judge:

Appellant was tried before a special court-martial composed of officer members and convicted of the possession and sale of lysergic acid diethylamide (LSD) in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892 (1976).[1] At his trial a laboratory report was used to prove the identity of the contraband. The appellant's trial defense counsel sought to produce the lab analyst, averring that he had spoken to the witness and that through cross-examination the defense would show:

That the test that this chemist did is not the most reliable test that could be done

on the LSD and that in fact his results are hearsay . . .

We expect to elicit from him one, that he ran a test on this LSD, an infra-red test. That he then gets from that test a result sort of like a zig-zag pattern. He then matches that pattern up against a known standard, and by matching to a known standard, he then concludes whether or not what he tested was in fact LSD. He in fact has never tested the known standard. He does not know that it's LSD, and the known standard has never been authenticated to the best of our knowledge.

Appellant's motion was denied. The issue on appeal is whether the denial of the request to produce the laboratory chemist as a witness violated appellant's Sixth Amendment rights to compulsory process and confrontation. We reverse.

In *United States v. Strangstalien,* 7 M.J. 225 (C.M.A.1979), the Court of Military Appeals held that a laboratory report used to establish the identity of a substance submitted for analysis could properly be admitted as a business entry without violating an accused's Sixth Amendment right to confrontation and cross-examination. *See* Mil. R.Evid. 803(6) and 803(8).[2] However, the admissibility of his report does not insulate the crime laboratory chemist from defense requests for production at trial when the defense wishes to examine him as to his competency and as to the accuracy of the procedure employed.[3] *United States v.*

1. Appellant was sentenced to a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $367 pay per month for six months, and reduction to the grade of Private E-1.

2. The federal courts have long recognized the business entry exception to the hearsay rule as permitting the introduction of laboratory reports to identify illegal drugs. *United States v. Coleman,* 631 F.2d 908 (D.C.Cir.1980); *United States v. Frattini,* 501 F.2d 1234, 1236 (2nd Cir.1974); *United States v. Ware,* 247 F.2d 698, 699 (7th Cir.1957). A laboratory report may also be admitted as an official record when it is accompanied by an authenticating certificate. *See Faust v. United States,* 163 U.S. 452, 16 S.Ct. 1112, 41 L.Ed. 224 (1896). These and similar hearsay exceptions are permitted be-

cause they are inherently marked with "trustworthiness" and indicia of reliability. *See e.g. Ohio v. Roberts,* 448 U.S. 56, 67, 100 S.Ct. 2531, 2540, 65 L.Ed.2d 597 (1980); *Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965).

3. Since most laboratory reports only state general conclusions, they may be given far more significance in court then they rightfully deserve. Inquiry during examination of the chemist may reveal the possibility of laboratory error due to the carelessness of the chemist sharing a limited area with others and due to the large numbers of samples being tested. The defense may further wish to ask what other substances were in the sample and how these would affect a true test reaction.

*Strangstalien, supra,* at 229; *United States v. Miller,* 23 U.S.C.M.A. 247, 250, 49 C.M.R. 380, 383 (1974). In *United States v. Vietor,* 10 M.J. 69 (C.M.A.1980), the Court qualified the accused's right to produce the chemist who performed the laboratory analysis. Judge Cook, writing the opinion of the court, declared that the defense must first make some averment "that examination of the analyst would adduce favorable evidence for the accused." *Id.* at 72. Chief Judge Everett, concurring in the result, observed: "Where the defense seeks to have produced for purposes of cross-examination as a hostile witness a chemist who has prepared the laboratory report on which the Government relies to prove its case, the materiality of his testimony need not be demonstrated in detail." *Id.* at 78. Judge Fletcher, concurring in the result, would hold that when the defense requests the witness, production is required unless "the chemist was unavailable or the utility of trial confrontation was too remote." *Id.* at 82.[4] Unlike his brothers, Judge Fletcher would place the burden of such a showing upon the Government. While each of the three opinions in *Vietor* may follow a different path toward the common end, they all espouse the basic premise that the accused needs to make some plausible showing of how the requested witness would be material and favorable to the defense.[5] In our opinion placing the burden upon the accused is proper since he is better situated to show how production of the chemist will be material to the defense case. *See* Mil.R. Evid. 103(a)(2).

The record here demonstrates that the appellant made a sufficient showing of materiality. After speaking with the witness, counsel determined that examination of the chemist would adduce favorable evidence. Counsel intended to establish that the chemist could not be certain that the substance was LSD because he did not perform the "most reliable" test and because the "known standard has never been authenticated to the best of our knowledge."[6] These facts if made known would tend to disprove the accuracy of the chemical analysis and question the competency of the person who ran the test. We conclude that failure to produce the chemist was, under these circumstances, prejudicial error.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge MILLER and Judge BADAMI concur.

---

4. Judge Fletcher adopts the logic of Justice Harlan enunciated in his concurring opinion in *Dutton v. Evans,* 400 U.S. 74, 95–6, 91 S.Ct. 210, 222-23, 27 L.Ed.2d 213 (1970) (emphasis added).

> If one were to translate the Confrontation Clause into language in more common use today, it would read: 'in all criminal prosecutions the accused shall enjoy the right to be present and to cross-examine the witnesses against him.' Nothing in this language or in its 18th-century equivalent would connote a purpose to control the scope of the rules of evidence. The language is particularly ill-chosen if what was intended was a prohibition on the use of any hearsay .... A rule requiring production of available witnesses would significantly curtail development of the law of evidence to eliminate the necessity for production of declarants *where production would be unduly inconvenient and of small utility to a defendant.*

*See also Ohio v. Roberts,* 448 U.S. at 65–7, 100 S.Ct. at 2538- 40. In many cases the identity of the seized substance is not at issue, thus it would be "of small utility" to an accused to produce the chemist. Moreover, it "would be unduly inconvenient" to require chemists to testify in every case because many of the analyses are made upon substances received from far-flung Army outposts and travel is not feasible because of distance and workload. This is not to say that a chemist who is otherwise available must always be produced to testify. There must still be a showing that his testimony somehow has a bearing on the issues at hand, that is, that the testimony offered must be outcome determinative.

5. *Cf. United States v. Valenzuela-Bernal,* U.S. ——, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

6. Trial Counsel argued that of the two tests which the chemist could have run, either was equally reliable. This would appear to be a question of fact to be determined by the factfinder.