Major Harry M. SCHMIDT, United States Air Force,

v.

Colonel Mary M. BOONE, United States Air Force, Military Judge, The United States Air Force, and The United States.

Misc. Docket No. 2004–01.

U.S. Air Force Court of Criminal Appeals.

31 March 2004.

For Petitioner: Charles W. Gittins, Lieutenant Colonel Clayton W. Moushon, ILANG, Major Andrea M. Gormel, USAF, and Major James E. Key III, USAF.

For Respondents: Colonel LeEllen Coacher, USAF, and Major James K. Floyd, USAF.

Before BRESLIN, ORR, and GENT, Appellate Military Judges.

## ORDER OF THE COURT ADDRESSING PETITION FOR EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF MANDAMUS

The cause before this Court is a Petition for Extraordinary Relief in the Nature of a Writ of Mandamus. For the reasons discussed below, we deny the requested relief.

### Procedural Background

On 8 January 2004, the petitioner filed this Petition for Extraordinary Relief in the Nature of a Writ of Mandamus in this Court. The petitioner asked this Court to order the respondents to process the petitioner's civilian defense counsel for a security clearance at the Secret level and for a stay of the proceedings until the personnel security investigation was completed and the clearance was adjudicated. The petitioner asserted that the action was necessary because his civilian defense counsel could not provide effective assistance without a Secret clearance. Specifically, the petitioner alleged that requiring civilian counsel to seek access to classified information through government counsel interfered with the privileges for attorney work-product and attorney-client communications. Additionally, the petitioner asked this Court to stay the proceedings until June 2004 so his military defense counsel may have adequate time to prepare for the petitioner's court-martial.

On 15 January 2004, this Court ordered the government to produce a transcript of the portions of the trial relevant to the petitioner's Petition for Extraordinary Relief. Additionally, we ordered that upon completion and authentication of the transcript, the counsel on behalf of the United States show

cause why the Petition should not be granted.

On 22 January 2004, the military judge conducted a telephonic Rule for Courts–Martial (R.C.M.) 802 conference in response to the petitioner's request to delay an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session scheduled for 26 January 2004 until 1 March 2004. The government opposed the petitioner's request for a delay. On 27 January 2004, after hearing argument from both sides, the military judge granted the petitioner's request for a delay and scheduled the Article 39(a), UCMJ, session for 1 March 2004, and the trial on the merits to begin on 5 April 2004. During the R.C.M. 802 conference, the petitioner's defense counsel objected to the 5 April 2004 trial date, but did not raise any concerns about the military judge's decision to reschedule the Article 39(a), UCMJ, session for 1 March 2004.

On 2 February 2004, the government filed an answer to the order to show cause along with the authenticated transcript of the pretrial proceedings relevant to the motion. Thereafter, both parties filed additional motions supplementing their arguments.

On 24 February 2004, the petitioner filed a motion with this Court for expedited review and for a stay of all court-martial proceedings until this Court renders a decision on his Petition for Extraordinary Relief in the Nature of a Writ of Mandamus. The petitioner asserted that some of the motions that the defense planned to litigate in the 1 March 2004, Article 39(a), UCMJ, session "may" involve classified information. He further asserted that because the petitioner's civilian counsel did not have a Secret clearance, the petitioner's ability to fully and adequately discuss classified information in this case with his civilian counsel had been chilled. Finally, the petitioner argued that his right to effective assistance of counsel would be prejudiced if the Article 39(a), UCMJ, session proceeded as scheduled. The government opposed the stay.

On 26 February 2004, this Court denied the motion for a stay of the Article 39(a), UCMJ, session scheduled to commence on 1 March 2004, and granted the petitioner's request for expedited review of his request for

extraordinary relief. On 27 February 2004, the United States Court of Appeals for the Armed Forces (CAAF), accepted the petitioner's appeal of this Court's denial of his request for a stay. The CAAF ordered a stay of the petitioner's court-martial and denied the petitioner's request for a writ of mandamus without prejudice. The CAAF authorized the petitioner to submit further filings once this Court has completed its review of the underlying writ petition.

*Law*

This Court is empowered to issue extraordinary writs. The power is "generally predicated upon the All Writs Act, 28 U.S.C. § 1651(a)." *Dettinger v. United States,* 7 M.J. 216, 218 (C.M.A.1979). While this power is great, it is not unlimited. Our superior court has stated that a writ of mandamus "is not to 'control the decision of the trial court,' but ... to confine ... [it] to the sphere of its discretionary power." *Id.* (quoting *Will v. United States,* 389 U.S. 90, 104, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967)). Additionally, the Court emphasized that the standards that govern the award of extraordinary relief are different than the standards for appeal from an action or decision in a case. *Id.* at 217. The Supreme Court has said:

> The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations. As we have observed, the writ "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" And, while we have not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of "jurisdiction," the fact still remains that "only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy."

*Kerr v. United States Dist. Court for Northern Dist.,* 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976) (internal citations omitted). The party requesting a writ of mandamus has "the burden of showing that its right to issuance of the writ is 'clear and indisputable.'" *Bankers Life and Casualty Co. v.*

*Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953) (quoting *United States v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 43 L.Ed. 559 (1899)). *See also Lemoine v. Baker*, 36 M.J. 86, 90 (C.M.A.1992) (summary disposition) (Crawford, J. dissenting). Petitioners must also "show that they lack adequate alternative means to obtain the relief they seek." *Id. See also Kerr*, 426 U.S. at 403, 96 S.Ct. 2119.

It is helpful at the outset to note certain well-established principles of law relating to security clearances. First, "no one has a 'right' to a security clearance." *Dep't. of the Navy v. Egan*, 484 U.S. 518, 528, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988); *Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir.1990).

Secondly, it is the sole province of the Executive Branch to establish the processes for determining eligibility for security clearances. *Egan*, 484 U.S. at 527, 108 S.Ct. 818 ("authority to classify and control access to information bearing on national security ... flows primarily from this constitutional investment of power in the President"). In deference to the Executive Branch, courts are reluctant to intrude upon the discretionary authority of the Executive in military and national security matters. *Webster v. Doe*, 486 U.S. 592, 601, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Egan*, 484 U.S. at 530, 108 S.Ct. 818. For this reason, courts will not review the merits of a decision whether to issue a security clearance.

> Predictive judgment of this kind must be made by those with the necessary expertise in protecting classified information. For "reasons ... too obvious to call for enlarged discussion," *CIA v. Sims*, 471 U.S. 159, 170, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985), the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk. The Court accordingly has acknowledged that with respect to employees in sensitive positions "there is a reasonable basis for the view that an agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information." *Cole v. Young*, 351 U.S. 536, 546, 76 S.Ct. 861, 100 L.Ed. 1396 (1956).

*Egan*, 484 U.S. at 529, 108 S.Ct. 818. *See also Stehney v. Perry*, 101 F.3d 925, 932 (3d Cir.1996) (and cases cited therein); *Dorfmont*, 913 F.2d at 1401; *Chesna v. Dep't of Defense*, 822 F.Supp. 90, 94 (D.Conn.1993), *dismissed*, 850 F.Supp. 110 (D.Conn.1994). Courts may, however, review whether the Executive Branch has complied with its own regulations for processing security clearances. *Webster*, 486 U.S. at 602 n. 7, 108 S.Ct. 2047; *Service v. Dulles*, 354 U.S. 363, 373, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Stehney*, 101 F.3d at 932; *Hill v. Dep't. of Air Force*, 844 F.2d 1407, 1412 (10th Cir.1988); *Chesna*, 822 F.Supp. at 95. Our superior court opined that courts may prohibit the government from proceeding in a court-martial if the denial of a clearance is "arbitrary or unsupportable in law." *United States v. Pruner*, 33 M.J. 272, 276 (C.M.A.1991).

### Analysis

In order to properly analyze this matter, it is helpful to first examine whether the government followed proper procedures in reviewing the civilian defense counsel's request to be processed for a security clearance. We must also determine whether reasonable alternative means of relief were available, whether a security clearance will permit petitioner's civilian defense counsel to obtain access to classified material without notice to government counsel, and whether failure to provide unfettered access will interfere with his attorney-client and attorney work-product privileges.

### A. Compliance with Regulations

■ The petitioner is charged with dereliction of duty, in violation of Article 92,

UCMJ, 10 U.S.C. § 892. The government alleges that he willfully failed to exercise appropriate flight discipline over his aircraft and he failed to comply with the rules of engagement and special instructions for airmen during an incident near Kandahar, Afghanistan.

As part of the discovery process, the government granted the petitioner's civilian counsel and detailed military counsel access to 12 volumes of the classified Collateral Investigation Board report and its associated evidence. Trial counsel sent a letter to the defense counsel outlining the steps required by regulations for the defense to obtain access to additional classified material. The petitioner's civilian and military defense counsel requested, and were granted, access to other classified information. Both parties agree that the government has granted the petitioner's defense counsel access to all of the classified information the defense requested from the government.

On 18 July 2003, Mr. Charles Gittins, the petitioner's civilian defense counsel, formally requested that he be processed for a security clearance at the Secret level in order to adequately represent the petitioner in this case. By letter dated 3 October 2003, the staff judge advocate for the convening authority advised Mr. Gittins that HQ AF/XOFI (Chief, Information Security Division), denied the request.

On 7 October 2003, petitioner's counsel submitted a motion for appropriate relief, asking the military judge to compel the government "to provide civilian defense counsel with a security clearance ... or ... order court-martial proceedings abated until such time as such clearance is granted to defense counsel." The government opposed the motion for appropriate relief. On 16 October 2003, at a preliminary session under Article 39(a), UCMJ, 10 U.S.C. § 839(a), the military

judge received documentary matters and heard argument on the issue. On 18 December 2003, the military judge issued an order denying the requested relief. The military judge found the government procedures were properly applied, and that these procedures did not deny the petitioner's rights to witnesses or evidence under Article 46, UCMJ, 10 U.S.C. § 846. The military judge informed the civilian defense counsel that she would reconsider her ruling if the government refused any defense request for access.

It is important to clarify the specific issue before this Court. The petitioner asserts that the government improperly refused to process his request for a security clearance.[1] Specifically, he maintains that the government failed to conduct the personnel security investigation (PSI) required for a secret clearance, and did not provide a proper adjudication of the request. The government maintains that, under the procedures established by the Air Force, the civilian defense counsel is not entitled to a PSI and formal adjudication of a security clearance; instead, he is entitled only to the streamlined process of a background check and access to specific classified information.

The petitioner relies upon Department of Defense (DoD) 5200.2–R, *Personnel Security Program* (Jan 1987), which is the regulation that establishes DoD processes for granting access to classified material. Paragraph C3.4.4.6 of the regulation states:

> Attorneys representing DoD military, civilian or contractor personnel requiring access to DoD classified information to properly represent their clients, shall normally be investigated by DIS [Defense Investigative Service] and cleared in accordance with the prescribed procedures in paragraph C3.4.2. This shall be done upon certification of the General Counsel of the DoD Component involved in the litigation

---

1. At various times during the Article 39(a), UCMJ, session on this matter, the civilian defense counsel asserted that he had a "right" to a security clearance [R. at 11], that his request for a clearance was "denied" [R. at 14], and that he was asking the Court to order the government to issue him a clearance [App. Ex. XXXIV]. As discussed above, no one has a right to a clearance, *Egan*, 484 U.S. at 528, 108 S.Ct. 818, and

no court will order the Executive Branch to furnish someone a clearance, *id.* at 530, 108 S.Ct. 818. Moreover, it appears the request for a clearance was never formally adjudicated. We conclude that the gravamen of the petitioner's argument is that he has a right to have his request for a security clearance processed in accordance with the governing regulations.

that access to specified classified information, on the part of the attorney concerned, is necessary to adequately represent his or her client. In exceptional instances, when the exigencies of a given situation do not permit timely compliance with the provisions of paragraph C3.4.2., access may be granted with the written approval of an authority designated in Appendix 5 provided that as a minimum: (a) a favorable name check of the FBI and the DCII has been completed, and (b) a DoD Non–Disclosure Agreement has been executed.

Thus the DoD regulation envisions two possible routes for an attorney outside the Executive Branch to obtain access to classified materials. The first route includes, among other things, a certification from the General Counsel of the component concerned that access to specified classified information is necessary, a PSI, and a formal adjudication of a clearance. The second route is more streamlined and includes an abbreviated background check and a grant of access to specific material.

The government relies upon Air Force Instruction (AFI) 31–401, *Information Security Management Program* (1 November 2001), paragraph 5.6, which sets out the processes to be used by the Air Force to determine whether to authorize access to classified materials to persons outside the Executive Branch. The Air Force regulation provides the authorizing officials may grant access once they have:

Determined the individual has a current favorable personnel security investigation as defined by AFI 31–501 and a check of the Defense Clearance and Investigations Index (DCII) and a local files check (LFC) shows there is no unfavorable information since the previous clearance. A LFC must be processed according to AFI 31–501. EXCEPTION: In cases where there is no current personnel security investigation as defined in AFI 31–501, MAJCOM [Major Command], DRU [Direct Reporting Units], and FOA [Field Operating Agency] commanders and heads of Secretariat or Air Staff offices may request a National Agency Check (NAC) and grant access up to the Secret level before the NAC is complete when there is a favorable LFC and the 497 IG/INS [497th Intelligence Group/Directorate of Security and Communications Management] confirms there is no unfavorable information on the individual in the DCII.

The DoD and Air Force processes are not the same. The DoD regulation indicates that "normally" the request will be processed in the same manner required for Top Secret, Secret, or Confidential security clearances, but that the streamlined process may be used in "exceptional instances" due to the "exigencies of a given situation." DoD 5200.2–R, ¶ C3.4.4.6. By contrast, the Air Force regulation sets out two possible routes: one where a current PSI exists, and one where there is no current PSI. AFI 31–401, ¶ 5.6. This second route is substantially similar to the streamlined process discussed under the DoD regulation. The Air Force regulation does not provide for a new PSI or formal adjudication of a security clearance for persons outside the Executive Branch.

The differences between these two regulations frame the conflict between the parties. The petitioner asserts that his civilian defense counsel is entitled to be processed for a full security clearance, including the PSI and formal adjudication process, under the DoD regulation. The government maintains that the Air Force regulation controls, and the civilian defense counsel is only entitled to the shorter process, noting that it ultimately affords the same access to classified materials.

We consider what regulatory procedure should have been applied here. Two sets of regulations are relevant to this question: one focuses on the protection of classified information and the other focuses on the personnel who gain access to classified materials. Of course, the power to prescribe regulations for granting access to classified materials belongs to the President. *Egan*, 484 U.S. at 527, 108 S.Ct. 818; *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 890, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Therefore, we begin our review with executive orders.

Executive Order No. 12958, *Classified National Security Information*, 60 Fed.Reg. 19825 (April 20, 1995), addresses protecting

classified information. We examine this order for some indication whether the President intended one mandatory process for this situation, and find no clear guidance. On one hand, the stated purpose of the order is to establish a uniform system for protecting classified information and assuring eligibility for access to classified materials. On the other hand, the order grants latitude to the agencies, including the military departments,[2] to establish additional procedures in certain circumstances. Exec. Order No. 12958, § 4.3(a), provides that, "Each agency shall establish controls over the distribution of classified information to assure that it is distributed only to . . . individuals eligible for access who also have a need-to-know the information." *See also* Exec. Order No. 12958, § 5.6(c)(5). Most importantly for our purposes, this executive order does not mandate a specific process for access to classified materials by those outside the Executive Branch. Rather, Exec. Order No. 12958, § 4.2(d), simply provides, "Persons authorized to disseminate classified information outside the executive branch shall assure the protection of the information in a manner equivalent to that provided within the executive branch."

DoD Directive (DoDD) 5200.1, *DoD Information Security Program* (13 Dec. 1996), implements Exec. Order No. 12958. The directive announces DoD policy that national security information should be safeguarded "in accordance with national-level policy issuances." DoDD 5200.1, ¶ 4.1. *See also* DoDD 5200.1, ¶ 5.5. The directive establishes a goal of consistency within the regulations.

DoD 5200.1–R, *Information Security Program* (Jan 1997), is the regulation that provides more specific guidance on DoD policy on information security. The foreword to the regulation indicates it is "mandatory for use by all the DoD Components." However, DoD 5200.1–R, ¶ C6.2.2, entitled "Access by Persons Outside the Executive Branch," provides that "Heads of DoD Components shall designate appropriate officials to determine, before the release of classified information,

the propriety of such action in the interest of national security and assurance of the recipient's trustworthiness and need-to-know." The paragraph provides guidance for release of classified information to specific classes of requestors. Paragraph C6.2.2.6 covers "Judicial Proceedings" and refers to DoD Directive 5405.2 (23 Jul 1985), governing the release of classified information in litigation. However, that directive, by its terms, does not apply to courts-martial. DoDD 5405.2, ¶ 2.2.1. Thus DoD 5200.1–R does not set out mandatory procedures for granting access to persons in the situation at bar.

Air Force Policy Directive (AFPD) 31–4, *Information Security* (1 Sep 1998), indicates that its purpose is to implement national policies in Exec. Order 12958. It also says it "interfaces with various other security publications" including DoD 5200.1–R and other Air Force policy directives and regulations. AFPD 31–4, ¶ 5, provides that, "Commanders of major commands (MAJCOM), direct reporting units (DRU), field operating agencies (FOA), and installations are responsible for establishing Information Security Programs, identifying requirements, and executing their programs to comply with this policy." The policy directive does not make any certain procedures mandatory.

AFI 31–401, *Information Security Program Management* (1 Nov 2001), declares that it contains Air Force unique guidance needed to "supplement" AFPD 31–4, DoD 5200.1–R, and Exec. Order No. 12958. Paragraph 1.1 states it is Air Force policy to protect classified material "consistent with national policy." Paragraph 1.3.2 of the instruction designates HQ USAF/XOFI as the office responsible for policy, resource advocacy, and oversight of the information security program. Paragraph 5.6 of this instruction, quoted above, is the paragraph relied upon by the government. It establishes policy for "Access by Persons Outside the Executive Branch," and provides guidance on how that is to be done "unless otherwise provided in DoD 5200.1–R, paragraph 6–201."[3] As noted above, DoD 5200.1–R does not specifically

---

2. *See* Amendment to Exec. Order No. 12958 (Sept. 18, 1995).

3. The citation to the paragraph is outdated, but matches what is currently DoD 5200.1–R, ¶ C6.2.2.

address the situation at hand. Thus it appears the Air Force regulation implements Exec. Order No. 12958, DoDD 5200.1, and DoD 5200.1–R, and is not inconsistent with their requirements.

A second set of regulations addresses the personnel who handle classified materials. Exec. Order No. 12968, *Access to Classified Information,* 60 Fed.Reg. 40245 (August 7, 1995), establishes the requirement for personnel security programs. Its stated purpose is to establish a "uniform Federal personnel security program for employees." On the other hand, the order grants some latitude to the agencies, including the military departments (*see* Exec. Order No. 12968, § 1.1), to establish additional procedures in certain circumstances. *See* Exec. Order No. 12968, §§ 2.4(c); 3.3(a)(2); 3.3(b); and 5.2(e).

DoD Directive 5200.2, *DoD Personnel Security Program* (9 Apr 1999), implements Exec. Order No. 12968. Paragraph 4.3.2 of the directive requires heads of the DoD components to "Ensure that the DoD Personnel Security Program is properly administered under this Directive within their components." However, the directive does not make specific procedures mandatory.

DoD 5200.2–R, *Personnel Security Program* (Jan 1997), is the regulation implementing Exec. Order No. 12968 and DoDD 5200.2. The foreword provides: "This Regulation is mandatory for use by all DoD Components." Paragraph C1.1.1 indicates its purpose is to establish policies and procedures for granting access to classified information. Paragraph C1.2.1 states the regulation "takes precedence over all other departmental issuances" affecting the DoD Personnel Security Program, and paragraph C1.2.2 indicates it applies to DoD civilian employees, military personnel and "other personnel who are affiliated with the Department of Defense." Finally, paragraph C1.2.4 provides that certain authorities may waive provisions of the regulation under "combat conditions" or other "military exigencies." Taken together, this language suggests that the provisions of DoD 5200.2–R are required for military departments.

DoD 5200.2–R, ¶ C3.4.4, is titled, *"Access by Persons Outside the Executive Branch."* Contrary to the petitioner's assertion, however, it does not establish mandatory procedures. Instead, it provides that "Access to classified information by persons outside the Executive Branch shall be accomplished in accordance with Chapter VII, DoD 5200.1–R," discussed above. As previously noted, that regulation does not prescribe specific procedures for processing requests for access to classified materials by those outside the Executive Branch.

DoD 5200.2–R, ¶ C3.4.4.6, quoted above, sets out procedures for granting access to persons outside the Executive Branch. The petitioner argues this paragraph is mandatory and controlling. However, DoD 5200.2–R, ¶ C3.4.4.6, is not couched in mandatory language. Rather it speaks in terms of what "shall *normally* be investigated." This, in turn, is based upon the agency's general counsel certifying the need for access, which is obviously a discretionary act. Nor does it mandate the requirements of the streamlined process, setting out only that which is needed "as a minimum." At the same time, the following paragraph, DoD 5200.2–R, ¶ C3.4.5, provides that personnel security clearances must be kept to "the absolute minimum necessary to meet mission requirements," and that a "personnel security clearance shall normally not be issued," to "persons in nonsensitive positions," or to persons "whose regular duties do not require access to classified information." [4]

AFPD 31–5, *Personnel Security Program Policy* (1 Aug 1995), implements DoDD 5200.2 and DoD 5200.2–R, and provides that "compliance with these policies is mandatory for all Air Force military and civilian personnel." AFPD 31–5, ¶ ¶ 6, 7. AFI 31–501, *Personnel Security Program Management* (1 Aug 2000), implements the policy directive. It states: "Use this instruction with Depart-

---

4. The original version of DoD 5200.2–R, ¶ C3.4.5, stated that personnel security clearances "shall *not* be issued" (emphasis in original) to persons in nonsensitive positions, etc. That original version is still included in the current Code of Federal Regulations, 32 C.F.R. § 154.16(e) (2003). The language "shall *normally* not be issued" (emphasis added) was included in Change 3 to the regulation dated 23 February 1996, but has not been published in the C.F.R.

ment of Defense (DOD) regulation 5200.2–R, *DOD Personnel Security Program,* January 1987, and Executive Order No. 12968, 'Access to Classified Information.'" With regard to access by persons outside the Executive Branch, AFI 31–501, ¶ 3.13, refers to the process set out in AFI 31–401 regarding information security. The instruction does not indicate why it does not follow the processes in DoD 5200.2–R, ¶ C3.4.4.6. However, it is not inconsistent with DoD 5200.2–R, ¶ C3.4.5, which requires keeping personnel security clearances to an absolute minimum.

After reviewing the controlling regulations, we are left with no clear indication of which procedure should control. The executive orders, the DoD directives, and the DoD regulations do not establish mandatory procedures applicable to this case. DoD 5200.1–R and 5200.2–R are not consistent about processes for granting access to classified information to persons from outside the Executive Branch. The procedure set out in AFI 31–401, ¶ 5.6, is consistent with both DoD 5200.1–R and DoD 5200.2–R, ¶ C3.4.5. The process upon which the government relies in this case is very similar to the streamlined route authorized by DoD 5200.2–R, ¶ C3.4.4.6. Thus, we find the process established in AFI 31–401 is not arbitrary or unsupportable in law.

The petitioner invites this Court's attention to DoD 5200.2–R, ¶ C7.1.3.1,[5] which provides, in part, that, "Access to classified information shall be granted to persons whose official duties require such access and who have the appropriate personnel security clearance." (Brief in Support of Pet. at 13.) He argues that this language means that a personnel security clearance is required before any grant of access. However, that interpretation would obviously conflict with DoD 5200.2–R, ¶ C3.4.4, which clearly allows for access in circumstances where the individual does not have a personnel security clearance. We construe DoD 5200.2–R, ¶ C7.1.3.1, to mean no more than it says— that where there is a valid personnel security clearance and a need-to-know, the responsible authority shall grant access.

The petitioner also argues that the requirement for a personnel security clearance in DoD 5200.2–R "could not be more explicit." (Brief in Support of Pet. at 15.) In support of this argument, he quotes a portion of DoD 5200.2–R, ¶ C3.4.4.1,[6] adding emphasis, as follows:

> Access to classified information by persons outside the Executive Branch **shall** be accomplished in accordance with 32 CFR Part 159 [Chapter VII, DoD 5200.1–R (reference (q))]. The investigative requirement **shall** be the same as for the appropriate level of security clearance. . . .

Unfortunately for the petitioner's argument, the language omitted from the quote is, "except as indicated below." The paragraphs that follow the petitioner's incomplete quotation provide numerous examples of circumstances where access is provided to persons without a personnel security clearance, including members of Congress, the United States Supreme Court, the federal judiciary, and state Supreme Courts, and to state governors and attorneys representing DoD contractor, civilian, or military personnel (the very circumstance at issue in this case).

The petitioner also argues that his civilian defense counsel is entitled to be processed for a security clearance in this case because the Navy gave him an interim security clearance in another case. Specifically, in an 18 July 2003 letter, the petitioner's civilian defense counsel avers that the Navy provided him with an interim Secret clearance for the purpose of representing his client in the case of *United States v. CDR Scott Waddle.* Additionally, the petitioner submitted an affidavit from Commander Young, co-counsel for the defense, stating that the U.S. Navy granted the petitioner's civilian defense counsel an interim security clearance in the *Waddle* case. In response, the trial counsel submitted an affidavit from Lieutenant Commander Rhodes, the Security Manager for the U.S. Pacific Fleet. In the affidavit, Commander Rhodes states that Mr. Gittins' request was not processed for a security clearance, that he was never granted an in-

---

**5.** 32 C.F.R. § 154.49(a).

**6.** 32 C.F.R. § 154.16(d)(1).

terim security clearance, and that instead Mr. Gittins was given limited access to classified information.

We find that the evidence is not sufficient to convince this Court that the U.S. Navy granted civilian defense counsel a security clearance in the *Waddle* case. In any event, the specific action taken by the U.S. Navy in an unrelated case is not controlling precedent for the U.S. Air Force, nor does it provide definitive guidance on interpreting DoD policy.

At the Article 39(a), UCMJ, session, civilian defense counsel argued that he is entitled to a security clearance because the approved civilian defense attorneys representing those detained at Guantanamo Bay, Cuba, after military operations in Afghanistan are being processed for security clearances. Apparently the argument is grounded upon the petitioner's notion of fairness based upon some evaluation of the relative worth of the persons facing adverse action. However, that analysis is inapplicable. The decision about who should receive security clearances is not based upon an evaluation of any individual's relative worth, but rather the need to protect national security. As the Supreme Court observed, "A clearance does not equate with passing judgment upon an individual's character." *Egan,* 484 U.S. at 528, 108 S.Ct. 818. Indeed, under DoD 5200.2–R, ¶ C3.4.4, personnel security clearances are not given to Members of Congress, the Supreme Court, or the federal judiciary, among others. Instead, they are granted access to classified information to the extent necessary to perform their required functions. In the same way, our analysis is not colored by perceptions of who is comparatively more deserving.

We also examine the Orders and Instructions governing the military tribunals to determine whether they shed any light on DoD policy with regard to the specific issue before this Court; i.e. whether the civilian defense counsel should be processed for a personnel security clearance or granted access through a more streamlined process.[7]

Military Commission Order No. 1, ¶ 4.C.(3)(b) states:

(b) The Accused may also retain the services of a civilian attorney of the Accused's own choosing and at no expense to the United States Government ("Civilian Defense Counsel"), provided that attorney: (i) is a United States citizen; (ii) is admitted to the practice of law in a State, district, territory, or possession of the United States, or before a Federal court; (iii) has not been the subject of any sanction or disciplinary action by any court, bar, or other competent governmental authority for relevant misconduct; (iv) has been determined to be eligible for access to information classified at the level SECRET or higher under the authority of and in accordance with the procedures prescribed in reference (c); and (v) has signed a written agreement to comply with all applicable regulations or instructions for counsel, including any rules of court for conduct during the course of proceedings. Civilian attorneys may be prequalified as members of the pool of available attorneys if, at the time of application, they meet the relevant criteria, or they may be qualified on an *ad hoc* basis after being requested by an Accused. Representation by Civilian Defense Counsel will not relieve Detailed Defense Counsel of the duties specified in Section 4(C)(2). The qualification of a Civilian Defense Counsel does not guarantee that person's presence at closed Commission proceedings or that person's access to any information protected under Section 6(D)(5).

Military Commission Instruction No. 5, ¶ 3.A.2.d.(ii) states, in part:

Civilian Defense Counsel applicants who do not possess a valid current security clearance of SECRET o[r] higher shall state in writing their willingness to submit to a background investigation in accordance with reference (g) and to pay any actual costs associated with the processing of the same. The security clearance application, investigation, and adjudication pro-

---

7. We note our superior court's order of a stay of the petitioner's court-martial proceedings cites for comparison Military Commission Order No. 1, ¶ 4.c.(3)(b), and Military Commission Instruction No. 5, ¶ 3.A.2.d.(ii).

cess will not be initiated until the applicant has submitted an application that otherwise fully complies with this Instruction and the Chief Defense Counsel has determined that the applicant would otherwise be qualified for membership in the Civilian Defense Counsel pool.

When setting up the military commissions, the Commander in Chief determined that those seeking a security clearance will comply with certain procedures in DoD 5200.2–R. However, the fact that the Commander in Chief decided to employ these procedures for military commissions does not require the conclusion that he intended the same procedures for civil or criminal cases tried by courts-martial or federal courts.

As noted above, courts will not review the Executive Branch's exercise of discretion in establishing procedures for deciding who gets a clearance. *Egan,* 484 U.S. at 530, 108 S.Ct. 818; *Webster,* 486 U.S. at 601, 108 S.Ct. 2047. However, if one were to do so, it is readily apparent that good reasons exist to treat the military commissions somewhat differently than trials by courts-martial or trials in federal courts. At the military commissions, some of the information may involve a greater or more immediate risk of harm to national security if such information were disclosed. Therefore, it makes sense to conduct a more thorough background investigation prior to granting access to a civilian defense attorney outside the DoD. Additionally, there are hundreds of detainees in U.S. custody that could face trial by the military commissions. We note DoD military commission instruction No. 5 directs that once the civilian defense counsel's personnel security investigation is complete, the civilian counsel is placed into a pool of potential civilian defense counsel. DoD MCI No. 5 ¶ 3(2)(d)ii. Once in this pool, it is possible for a civilian defense counsel to work on more than one case. The streamlined process might not afford as great a benefit if it had to be repeated for the same counsel in several successive cases. Therefore, it is a reasonable exercise of discretion for the government to pursue grants of security clearances rather than the streamlined procedure.

While the petitioner asserts his civilian defense counsel is similarly situated as the civilian defense counsel for the military commissions, he is not. There are many reasons why the authorizing officials might elect a streamlined access process in a court-martial or federal case rather than undertaking a lengthy PSI and formal adjudication process. First, the streamlined process takes less time. Second, a shorter process would undoubtedly cost less money, especially if it is only for one trial. Third, the security risk in courts-martial or federal court proceedings may be such that the government may not be as concerned about the risk of the information's disclosure. Thus, we are not persuaded that the military commissions example cited by the appellant provides useful guidance on what process should have been employed in this case.

Considering all the circumstances, we are not convinced that the processes set out in AFI 31–401, ¶ 5.6, are improper, arbitrary, or unsupported in law. We find the military judge did not err in denying the petitioner's motion for appropriate relief. Therefore, we find no basis for the exercise of our extraordinary writ authority in this case. However, even if the government's process was not proper, the petition must fail for the reasons discussed below.

## B. Availability of Alternative Means of Relief

It appears that Mr. Gittins, the civilian defense counsel, is also an officer in the U.S. Marine Corps in an inactive reserve status. At about the same time Mr. Gittins asked the Air Force to process him for a PSI, he requested a security clearance through the U.S. Marine Corps. On 18 August 2003, Mr. Gittins submitted an application for a security clearance to U.S. Marine Corps security managers. On 8 January 2004, the day after this petition was filed, U.S. Marine Corps security managers notified Mr. Gittins that additional information was required to complete the processing for his security clearance, including an electronic version of the Standard Form (SF) 86, fingerprint cards, updated release forms, and personal information about immediate family members that

was omitted from the SF 86. On 28 January 2004, the U.S. Marine Corps security managers again asked Mr. Gittins to supply the requested information. On 24 March 2004, the Chief of Military Justice, Headquarters Eighth Air Force, sent a letter to Mr. Gittins again reminding him of the need for the additional information required to process his request for a security clearance through the U.S. Marine Corps. The letter also noted that if the information is supplied, the U.S. Marine Corps could grant an interim Secret clearance within a week, and that the U.S. Air Force would honor that clearance.

The above information came to the attention of this Court by government motion on 25 March 2004. In a response to the motion dated 30 March 2004, defense counsel do not contest the factual allegations but insist they are not relevant to the case at hand.

■ As noted above, a writ of mandamus is a drastic remedy, only employed in exceptional circumstances. *Kerr*, 426 U.S. at 402, 96 S.Ct. 2119. Extraordinary relief is not available where the Petitioner has adequate alternative means to obtain the relief he seeks. *Lemoine*, 36 M.J. at 90 (Crawford, J. dissenting).

■ Defense counsel seeking a clearance can be required to furnish "the minimal information which would allow the Government to make a decision whether to grant the security clearance." *Pruner*, 33 M.J. at 276. "In the event defense counsel refuses to initiate a request with its information base, or becomes adamant, dilatory, or otherwise seeks to delay the judicial processes, the Government should be permitted to proceed." *United States v. Nichols*, 23 C.M.R. 343, 351, 1957 WL 4495 (C.M.A.1957) (Latimer, J., concurring in the result).

It appears Mr. Gittins had available an alternate means of obtaining the security clearance he now seeks, by providing the necessary information to the U.S. Marine Corps. Apparently it is the same information that would have been required had the military judge granted the defense motion that formed the basis for this petition for extraordinary relief. Where Mr. Gittins has failed to take the steps necessary to obtain

reasonable alternative relief, this Court will not grant an extraordinary remedy.

*C. Effectiveness of the Requested Relief*

■ The petitioner contends that his civilian defense counsel needs a security clearance so that he may fully and adequately discuss classified information with his attorney without alerting government counsel to the subjects of his discussion. He further asserts that his civilian defense attorney cannot fulfill his ethical responsibility to conduct a full investigation of the case without a Secret clearance.

It is essential to understand that gaining access to classified material involves two separate and distinct processes. First, there must be a determination that the person is suitable for receiving classified materials. Secondly, it must be determined that the person has a "need-to-know" the classified material. The President's order, Exec. Order No. 12968, § 1.2(a), specifically indicates: "No employee shall be granted access to classified information unless that employee has been determined to be eligible in accordance with this order and to possess the need-to-know." Exec. Order No. 12968, § 1.1(h), defines "need-to-know" as a "determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function." Similarly, DoD 5200.2–R, ¶ C7.1.1.1, explains:

> The issuance of a personnel security clearance ... is a function distinct from that involving the granting of access to classified information. Clearance determinations are made on the merits of the individual case with respect to the subjects [sic] suitability for security clearance. Access determinations are made solely on the basis of the individual's need for access to classified information in order to perform official duties.

The definitions of "security clearance," "need to know," and "access" guide our analysis. DoD 5200.2–R, ¶ DL1.1.21, defines "security clearance" as, "A determination that a person is eligible under the standards of this

Regulation for access to classified information." Also, DoD 5200.R–2, ¶ DL 1.1.17, provides:

Need to know: A determination made by a possessor of classified information that a prospective recipient, in the interest of national security, has a requirement for access to, knowledge, or possession of the classified information in order to perform tasks or services essential to the fulfillment of an official United States Government program.

The term that supplies the greatest amount of confusion is "access." The regulations (and the parties) use the word in contexts that suggest at least three definitions. The word "access" is commonly used to suggest authorized access, that is, an official grant of access based upon a determination of eligibility and a need-to-know. The term is also used broadly to describe any actual access to classified information, without regard to whether it is authorized. *See* DoD 5200.2–R, ¶ DL1.1.1, ("Access" is "The ability and opportunity to obtain knowledge of classified information"). Finally, the parties use the term "access," inartfully, to denote the streamlined process under both the DoD and USAF regulations for obtaining some limited classified material for a temporary purpose.

It is important to distinguish between "clearance" and "access" in order to understand that the grant of a security clearance does not equate to the grant of access to classified material. DoD 5200.2–R, ¶ DL1.1.17, makes clear that, "access to classified information shall not be afforded to any individual solely by virtue of the individual's ... security clearance." To the contrary, the determination of access is an entirely separate function from the grant of a clearance.

As noted above, before any grant of access, the reviewing official must determine the potential recipient's need-to-know. The decision whether to grant access also requires the consent of the agency that originally obtained the classified material. *See* Exec. Order No. 12958, § 4.2(b) ("An agency shall not disclose information originally classified by another agency without its authorization.").

The petitioner's request for extraordinary relief is premised upon the assumption that if his civilian defense counsel is granted a security clearance at the Secret level, the petitioner will have the unfettered right to disclose all the Secret classified material within the petitioner's knowledge or control, without requesting permission to do so through the government representatives. This is not correct. The grant of a security clearance to any person only makes him or her eligible to receive classified information; the consent of the originating agency of the specific classified material and a determination of need-to-know is still required.

In the preliminary session before the military judge and in the pleadings before this Court, the government argued that the detailed military defense counsel with approved security clearances are at liberty to discuss classified matters with the petitioner. Unless there has been some grant of access not apparent in the record before us, that position is inconsistent with the Executive Orders and the DoD regulations. To the contrary, persons with a security clearance are not entitled to access to classified information without a "need-to-know" and the consent of the originating agency.

Courts exercising authority under the All Writs Act, 28 U.S.C. § 1651(a), "have discretion to determine whether and when relief is appropriate." *Keys v. Cole*, 31 M.J. 228, 234 (C.M.A.1990). Generally, courts will not issue a writ of mandamus "in a federal criminal proceeding where the object desired would not be accomplished even if the writ were issued." *See* Philip E. Hassman, Annotation, *Propriety of Issuing Writ of Mandamus in Federal Criminal Proceedings*, 29 A.L.R. Fed. 218, 265 (1976). The central purpose of this petition for extraordinary relief was to obtain unfettered access to classified material during the pretrial investigation. However, even if the request for a security clearance was processed and granted, that would not give the petitioner's counsel the unrestricted access he seeks. Under the circumstances, we find no basis for granting the extraordinary relief.

*D. Attorney Work–Product and Attorney–Client Privileges*

The petitioner objects to the current procedures for obtaining access to classified government information required as part of his pretrial investigation of this case, which require defense counsel to channel such requests through the trial counsel.[8] Specifically, the petitioner argues that this process requires the petitioner to disclose defense work product, strategy, and (potentially) client confidences to the prosecution. The petitioner asserts that some classified information is within his knowledge or possession, and that having to go through government counsel to discuss these matters with his defense counsel intrudes upon his attorney-client privilege. Recognizing that he must ask the government for some of the desired classified information, the petitioner suggests that this Court order the appointment of an Independent Security Officer (ISO), who is not a member of the prosecution team, to facilitate defense access to classified material. We find no merit to this argument.

The Constitution of the United States gives to Congress the authority to regulate the armed forces. U.S. CONST. art. I, § 8, cl. 14. Acting upon that authority, Congress enacted the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 801–946, establishing procedural and substantive rules for the prosecution of criminal offenses in the armed forces. In the UCMJ, Congress delegated to the President the authority to prescribe pretrial, trial, and post-trial procedures for courts-martial, Article 36(a), UCMJ, 10 U.S.C. § 836(a). This delegation provides that the regulations shall, "so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts," thus giving some discretionary authority to the President in this regard. Art. 36(a), UCMJ. The President, acting upon that delegated authority, promulgated the Rules for Courts-Martial (R.C.M.) and the Military Rules of Evidence (Mil. R. Evid.).

In Article 46, UCMJ, Congress provided that "the trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." The President set out rules for discovery of evidence and witnesses in Rules for Courts-Martial (R.C.M.) 701 and 703.

R.C.M. 701 covers evidentiary matters. Under the rule, the trial counsel must provide notice and discovery of certain evidence even without a defense request. R.C.M. 701(a)(1), (3), (4), and (6). Similarly, the defense is required to provide notice and discovery to the prosecution of certain matters, even absent a request. R.C.M. 701(b)(1)(A) and (2). The rule also provides that each side, upon request, shall give certain notices (R.C.M. 701(a)(5) and (b)(1)(B)(i)), and shall permit the opposing side to inspect certain evidentiary matters (R.C.M. 701(a)(2) and (b)(1)(B)(ii)). If a dispute arises, the military judge is empowered to issue appropriate orders necessary to resolve the matter.

With regard to requests for witnesses, R.C.M. 703(c)(2)(A) requires that defense counsel submit to the trial counsel a list of requested witnesses. The trial counsel must determine whether the witnesses are material and relevant, and make necessary arrangements for their attendance. If the defense counsel disputes trial counsel's decision regarding production of a witness, the defense counsel may seek an order of production from the military judge. R.C.M. 703(c)(2)(D).

The President also promulgated Mil. R. Evid. 505 dealing specifically with the disclosure of classified information under the UCMJ. *See also* R.C.M. 701(f). The rule "applies to all stages of the proceedings." Mil. R. Evid. 505(a). By its express terms, Mil. R. Evid. 505 applies to the investigative stages of the trial, including before the referral of charges (Mil. R. Evid.505(d)), and between referral and arraignment (Mil. R. Evid.505(e)). The rule empowers the mili-

---

**8.** The petitioner acknowledges the need to notify the government of classified evidence he intends to use at trial, and states he has no objection with the disclosure requirements of Military Rule of Evidence 505. (Reply Brief at 4, 7.)

tary judge to control the discovery of necessary classified matters, and to issue such orders as may be required in the interests of justice and a fair and expeditious trial.

■ Trial defense counsel has no right to discovery of classified information without going through government counsel. In *United States v. Rivers*, 49 M.J. 434, 437 (C.A.A.F.1998), our superior court held, "the defense is not entitled to unrestricted access to government information." The Supreme Court consistently supports this rule of law. "A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). *See also United States v. Bagley*, 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ("[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial."); *United States v. Agurs*, 427 U.S. 97, 111, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ("[W]e have rejected the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel. . . .").

■ In *United States v. Vietor*, 10 M.J. 69 (C.M.A.1980), the (then) Court of Military Appeals considered whether the military judge properly denied a defense request for a witness. Judge Everett, concurring in the result, discussed the process by which defense counsel was required to request witnesses through the trial counsel. *Id.* at 77–78. He noted that the requirement of making the request through trial counsel affords the government the opportunity to consider alternatives, including producing the witness, arranging for another witness, or offering a legally permissible substitute for the testimony. He also noted that the government has an interest in minimizing the cost and difficulty of producing witnesses and evidence. Judge Everett concluded that the discovery rules reflect legitimate policy determinations made by the President under the authority conferred by Article 36, UCMJ.

Military practice is consistent with federal law regarding classified information. The Classified Information Procedures Act (CIPA), 18 U.S.C.App. §§ 1–16, is the federal counterpart to Mil. R. Evid. 505. *United States v. Duncan*, 38 M.J. 476, 479 n. 5 (C.M.A.1993). "In Federal civilian criminal trials, reasonable steps can be taken to protect classified materials from unnecessary disclosure which would be detrimental to the national security." *Pruner*, 33 M.J. at 275. The CIPA applies to pretrial discovery and authorizes the judge to issue orders in the interests of justice. 18 U.S.C.App. § 4.

The government's interest in protecting classified materials has withstood constitutional challenge in federal court. In *United States v. Usama Bin Laden, et al.*, 2001 WL 66393, 2001 U.S. District LEXIS 719 (S.D.N.Y. January 25, 2001), the district court for the Southern District of New York discussed the purpose of the CIPA.

CIPA was enacted by Congress in 1980 to address the issues which accompany criminal prosecutions involving national security secrets. In particular, the Act was a response to the problem of "graymail" which arose in prosecuting espionage and criminal leak cases. S.Rep. No. 96–823, 96th Cong., 2d Sess. (1980)[, U.S.Code Cong. & Admin.News 1980, p. 4294]. A defendant is said to "graymail" the government when he threatens to disclose classified information during a trial and the government is forced to choose between tolerating such disclosure or dismissing the prosecution altogether. *See United States v. Pappas*, 94 F.3d 795 (2d Cir.1996) (discussing "graymail" and CIPA's legislative history); *United States v. Poindexter*, 725 F.Supp. 13, 31 (D.D.C.1989) (same). In CIPA, Congress established procedures whereby a trial court evaluates before trial the admissibility of the classified information which is at issue.

*Bin Laden*, 2001 WL 66393, at *1, 2001 U.S. Dist. LEXIS 719, at *3–4 (S.D.N.Y.2001). In *Bin Laden*, the defendant raised arguments similar to those before this Court. The District Court concluded that, "CIPA does not require that a defendant reveal his or her trial strategy, but only mandates that the defendant identify whatever classified information he plans to use." *Id.* at *5, 2001 U.S.

Dist. LEXIS 719, at *17. In *United States v. Wen Ho Lee,* 90 F.Supp.2d 1324, 1327 (D.N.M.2000), the court found that the pretrial disclosures required by CIPA, such as notifying the government of the classified information they intend to question prosecution witnesses about did not violate the Fifth or Sixth Amendment rights of the defendant. The federal courts require the trial court judge to conduct a balancing test between protecting national security and the petitioner's right to effective assistance of counsel. *See also United States v. Collins,* 720 F.2d 1195 (11th Cir.1983); *Lee,* 90 F.Supp.2d at 1328; *United States v. Poindexter,* 725 F.Supp. 13, 35 (D.D.C.1989).

The petitioner's request for access to classified information is not substantially different than a discovery request in any other case. For example, in a urinalysis case a defense counsel may want to challenge the accuracy of the laboratory report; it is not a violation of his work-product to be required to ask trial counsel for background data on the laboratory's accuracy. Similarly, a defense counsel who seeks to investigate the voluntariness of a confession must still request production of agents' notes and internal memoranda through the trial counsel. In the same way, R.C.M. 701(b)(2) requires the defense to provide notice of its intent to raise certain defenses such as alibi or lack of mental responsibility. Arguably, these required notices could reveal the defense strategy in a particular case. Nonetheless, they do not violate the petitioner's rights. *Poindexter,* 725 F.Supp. at 33 (citing *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)); *Lee,* 90 F.Supp.2d at 1327 ("CIPA requires no more revelation of the defendant's thoughts or plans than do the notice of alibi and similar rules of federal criminal procedure."). While the petitioner has a constitutional right to counsel and to present a defense, he has no constitutional right to unrestricted discovery. *Ritchie,* 480 U.S. at 59, 107 S.Ct. 989 ("Defense counsel has no constitutional right to conduct his own search of the State's files . . . ."). The Constitution does not guarantee "an unqualified right to undiminished surprise." *Poindexter,* 725 F.Supp. at 34.

To allow the petitioner to disclose classified information to his counsel without first obtaining: (1) approval from the originating agency, (2) a determination of need-to-know, and (3) a proper grant of access, would violate Presidential restrictions on the dissemination of classified information. There is no evidence the petitioner has been authorized to make such determinations for the Air Force or any other agency. Simply put, it is not up to the petitioner or his counsel to decide whether counsel has a need-to-know the classified information.

> Although the eye of an advocate may be helpful to a defendant in ferreting out information, *Dennis v. United States,* 384 U.S. 855, 875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), this Court has never held . . . that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary.

*Ritchie,* 480 U.S. at 59, 107 S.Ct. 989.

The petitioner cites the decision in *United States v. King,* 53 M.J. 425 (C.A.A.F.2000) (mem.), in support of his argument that requiring the defense to seek access to classified information through the prosecution invades attorney-client communications. However, the normal process for obtaining access to classified information is easily distinguished. In *King,* the convening authority appointed an Information Security Officer whose duties included monitoring communications among counsel and between counsel and the appellant. The Court found that this arrangement was not the least restrictive means of providing protection of classified information and the appellant's right to counsel under the Sixth Amendment and Article 27, UCMJ, 10 U.S.C. § 827.[9] In this case, there is no requirement that someone monitor discussions between the defense counsel and the petitioner, only that the petitioner pursue a proper grant of access before revealing classified information to others.

9. The government subsequently agreed to process the defense counsel for interim security clearances and lift the monitoring requirement. *King,* 53 M.J. at 425.

The petitioner argues that the discovery procedure imposes an "unequal burden" on the defense. The argument is specious, because it compares the wrong things, *viz:* the defense access to government information and the government's access to government information. If the goal is "equal opportunity to obtain witnesses and other evidence" under Article 46, UCMJ, the only valid comparison would be the defense's access to government evidence compared to the government's access to defense evidence. That comparison shows the defense has the advantage. *Compare* R.C.M. 701(a) and (b). In any event, under R.C.M. 701 and 703 the parties' discovery rights are balanced, so that no due process violation exists. *See Collins,* 720 F.2d at 1195; *Lee,* 90 F.Supp.2d at 1329; *Poindexter,* 725 F.Supp. at 35.

We considered the petitioner's request for appointment of an Independent Security Officer (ISO) to act as the government representative in lieu of the trial counsel. However, the proposal is unworkable, contrary to lawful procedural rules, and unfairly prejudicial to the government's legitimate interests. The petitioner has a right to see classified information only when it is material and relevant to his defense. R.C.M. 701(a)(2). We note that trial counsel can often assist the defense in obtaining discovery because of trial counsel's unique position to understand the significance of the information—indeed, it appears the trial counsel was integrally involved in obtaining the release of the classified information disclosed to date. An ISO who is not involved in the case will not be in a position to know what is material and relevant. It is readily foreseeable that there may be a disagreement between the defense counsel and the ISO over releasing certain information, but the petitioner's proposal offers no process for litigating the issue or resolving disputes. If the trial counsel were not involved in the dispute resolution process, it would deny the government the opportunity to challenge the relevance and materiality of the evidence before the military judge, contrary to Mil. R. Evid. 505(e) and (f). The proposal would also deny the government the opportunity to consider alternatives. *See* Mil. R. Evid. 505(f); *Vietor,* 10 M.J. at 77–78; *cf. Collins,* 720 F.2d at 1197;

18 U.S.C.App. § 4 (CIPA authorizes the government to consider alternatives to discovery, such as deleting classified information from disclosed documents, substituting a summary of information, or substituting a statement admitting relevant facts the classified information would tend to prove).

We conclude R.C.M. 701 and 703, and Mil. R. Evid. 505, are entirely consistent with the rule-making authority granted to the President by Congress under Articles 36 and 46, UCMJ. The rules provide a reasonable process to assure "equal opportunity to obtain witnesses and other evidence" under Article 46, UCMJ, while protecting the interests of both parties. Where, as here, the material in question is classified information, the government's interests are even more important. "[N]o governmental interest is more compelling than the security of the Nation." *Haig v. Agee,* 453 U.S. 280, 307, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981); *Lee,* 90 F.Supp.2d at 1328; *Poindexter,* 725 F.Supp. at 34. The procedures for obtaining discovery of classified materials do not deny the petitioner the due process of law.

A request for access to classified information need not reveal the defense thought processes or strategy to such an extent that it destroys the privileges in attorney work-product or attorney-client communications. Should something truly unusual arise, the military judge is in the best position to resolve the matter using the authority provided in Mil. R. Evid. 505. To hold otherwise would give the petitioner that which the courts have consistently denied—unfettered access to government information. *Ritchie,* 480 U.S. at 59, 107 S.Ct. 989. Where, as here, that information is classified, such an order would usurp the authority of the Executive Branch to determine procedures for granting access to classified materials. This we will not do. *Egan,* 484 U.S. at 529, 108 S.Ct. 818.

*Conclusion*

We find that the petitioner has failed to meet the high burden of showing that he is entitled to extraordinary relief. First, petitioner has not shown that the Air Force failed to follow controlling regulations re-

garding the method for providing the petitioner's civilian defense counsel access to classified information, thus the military judge's ruling was not erroneous. Secondly, alternative means of relief were available but not pursued by the petitioner's civilian counsel. Third, and more importantly, the petitioner has not shown that the relief he requests will accomplish his desired objective of obtaining unfettered access to classified information. Fourth, he has not shown that his privilege in attorney work-product or attorney-client communications gives him the right to access classified information without going through government counsel. Finally, he has failed to show any real prejudice arising from the required process for obtaining access to classified information. We find no justification for this Court to overturn the military judge's ruling. For the same reason, we find no basis to grant the requested stay. We note, however, that the U.S. Court of Appeals for the Armed Forces has already granted a stay pending further action.

Accordingly, it is by the Court, this 31st day of March 2004;

ORDERED:

That the Petition for Extraordinary Relief in the Nature of a Writ of Mandamus is DENIED.